JOHN O'BRIEN, Petitioner, *v.* STATE BAR OF NEVADA, Respondent.

No. 29748

January 22, 1998                         952 P.2d 952

*Donald J. Campbell & Associates*, Las Vegas, for Petitioner.

*Rob W. Bare,* Bar Counsel and *Wayne Blevins*, Executive Director, Las Vegas, for Respondent.

# OPINION

By the Court, SHEARING, J.:

Petitioner John O'Brien petitions this court for a writ of mandamus or prohibition directing the Board of Governors of the State Bar of Nevada ("the Board") to vacate the appointment of

attorney Laura Wightman FitzSimmons to the Nevada Commission on Judicial Selection ("the Commission"), compelling State Bar President-Elect Robert Dickerson to disclose to the Board of Governors the basis of false information that he presented to the Board, and directing the Board to engage in a new selection process for the appointment of a member to the Commission.

Having considered the petition on file herein, together with the additional pleadings submitted by Mr. O'Brien, we conclude that our intervention is not warranted at this time. For the reasons herein expressed, we deny the petition. *See* NRAP 21(b) (this court, in its discretion, may summarily dismiss a petition for an extraordinary writ without ordering the respondent or the real party in interest to file an answer to the petition).

Initially, we note, as Mr. O'Brien concedes, that this petition does not seek relief within the traditional scope of a petition for a writ of mandamus or prohibition. Nevertheless, this court has "inherent supervisory authority over the State Bar of Nevada, and a strong interest in assuring that not only bar counsel, but all members of the State Bar of Nevada, and all its functionaries, perform their duties properly." Waters v. Barr, 103 Nev. 694, 696, 747 P.2d 900, 901 (1987); *see also* SCR 76(1) ("The state bar is under the exclusive jurisdiction and control of the supreme court . . . ."). Thus, if this court were so inclined, it would have the power to fashion an appropriate remedy in this case. We are not presently concerned with whether this court has the power to intervene in matters relating to the state bar. Instead, we are only concerned with whether Mr. O'Brien has demonstrated that this court's intervention is warranted. As previously stated, we conclude that he has not.

## FACTS

On December 11, 1996, the Board met to consider the applicants for appointment to the Commission. Eleven Board members, a quorum, were present. *See* SCR 87(5) (a majority of the Board members constitutes a quorum for the transaction of any business). Two applicants, the incumbent, Ms. FitzSimmons, and Mr. O'Brien, were nominated for appointment. During the discussion, Mr. Dickerson stated to all present that someone had told him that Mr. O'Brien had a serious disciplinary complaint pending against him. Subsequently, Ms. FitzSimmons was reappointed to the Commission by a vote of six to five. Mr. Dickerson voted for Ms. FitzSimmons.

The accusation of Mr. Dickerson, that a serious ethical com-

plaint was pending against Mr. O'Brien, could not have been further from the truth.[1] Mr. O'Brien has been an active member of the State Bar of Nevada since 1969; no disciplinary complaint has ever been filed against him. Indeed, Mr. O'Brien served for seven years as a member of the Board of Governors of the State Bar of Nevada, and for one year as president of the state bar. He has also served as a U.S. Magistrate and as a member of the Nevada Commission on Judicial Discipline. In short, Mr. O'Brien's record as an attorney and public servant is beyond reproach.

Believing that the process by which he had been denied appointment to the Commission was unfair, Mr. O'Brien filed this writ petition. In direct response to the petition, the Board held a meeting on January 2, 1997. Thirteen of the Board's fifteen members participated in that meeting, either directly or by telephone.[2] The first matter on the agenda for consideration by the Board was to "consider [a] motion to rescind [the] previous vote of the Board of Governors on December 11, 1996, in the appointment of a representative . . . to the Commission on Judicial Selection."

At the meeting, Mr. Dickerson informed the members at great length what he remembered of the earlier meeting. Other members of the Board and the state bar were also afforded an opportunity to express their views on what had happened, and whether the process by which Ms. FitzSimmons was reappointed as a member of the Commission was fair. Both Mr. O'Brien and Ms. FitzSimmons made statements to the Board members at this meeting. At the close of discussion, the Board voted on whether to reconsider its appointment of Ms. FitzSimmons to the Commission. The Board voted seven to six not to reconsider the appointment.

---

[1] Mr. Dickerson does not concede that he accused Mr. O'Brien of having a serious disciplinary complaint pending against him. According to Mr. Dickerson, he stated as follows: "Interestingly, to show you how important this appointment apparently is to some people, I even had someone suggest that John O'Brien may be the subject of a pending or recently completed disciplinary case with the state bar. I personally do not believe it, and I am confident it is not true." Other members of the Board apparently remember the comment differently. In any event, the exact statement is not germane to our decision. It is sufficient for purposes of this opinion that Mr. Dickerson made a comment that conveyed the message to the others present that a disciplinary complaint might have been pending against Mr. O'Brien.

[2] A fourteenth member attended the meeting, but had to leave before a vote was taken. A fifteenth member also participated in the meeting, but abstained from voting.

## DISCUSSION

In his petition before this court, Mr. O'Brien raises one claim only: he asserts that the appointment of Ms. FitzSimmons to the Commission was accomplished by a fraud upon the Board. Mr. O'Brien does not suggest that Mr. Dickerson perpetrated a fraud. Instead, he expressly argues that Mr. Dickerson was the target of a fraud that was perpetrated by "someone who was determined to see Ms. FitzSimmons appointed." Based solely on this alleged fraud, Mr. O'Brien seeks the intervention of this court.

The Board was fully informed of the facts at its subsequent meeting, but nevertheless decided not to rescind the prior appointment.[3] Mr. O'Brien has never asserted that he is entitled to be appointed by the Board; he seeks in this petition a writ compelling the Board to engage in a new selection process after having been properly informed of the facts.

On January 31, 1997, we entered an order recognizing that since the Board had already fully considered this matter after having been informed of the facts, it appeared that the petition was moot. Accordingly, we ordered Mr. O'Brien to show cause why this petition should not be dismissed. In response, Mr. O'Brien argues that his petition is not moot because the Board did not engage in a new selection process. Instead, it voted not to rescind its prior appointment of Ms. FitzSimmons. This is largely a semantic distinction. Although the Board did not conduct a new selection meeting, it was informed of the facts and qualifications of the only two nominated candidates. The Board voted not to rescind its prior action, knowing full well that this meant that its appointment of Ms. FitzSimmons would stand. Whether the Board's decision was based on its perception that Ms. FitzSimmons was the person it desired to appoint or its view that the appointment process was not unfair, is irrelevant. The point

---

[3]The Board was not informed of who allegedly made the comment that inspired Mr. Dickerson's unfortunate comment. Nevertheless, this fact is not particularly relevant. The issues before the Board were whether the comment had any basis in fact, and whether the comment influenced the vote against Mr. O'Brien. Ms. FitzSimmons addressed the Board and stated "[i]f any one of you who voted for me were motivated to do so in any degree by the statement of Mr. Dickerson concerning Mr. O'Brien, please speak up now and say so." The members of the Board were silent. Moreover, as noted above, the majority of the Board voted not to rescind Ms. FitzSimmons appointment. It can therefore be inferred that Mr. Dickerson's comment did not affect the vote of those members of the Board who voted for Ms. FitzSimmons. Ms. FitzSimmons further told the Board that she was not in any way involved in any fraud as alleged by Mr. O'Brien, and a majority of the Board apparently found her statement credible.

is, the Board acted with full knowledge, and appointed a member to the Commission, as it had the authority to do. No right of Mr. O'Brien has been abridged by the Board's action.

In his response to our order to show cause, Mr. O'Brien has raised two issues not previously raised. First, he argues that District Judge Steven E. Jones should not have participated in the voting because the Nevada Constitution does not envision that a district judge acting as a duly elected member of the Board of Governors of the State Bar might select a member of the Judicial Selection Commission. Mr. O'Brien suggests that there may be a conflict of interest if a judge participates in the selection of a member of the Commission "who could quite conceivably be later asked to pass on the merits of that very judge in Commission proceedings."

It is conceivable that a situation could arise where the Commission would be required to pass on the merits of a sitting judge who is also a member of the Board—for example, if the Commission voted on whether to nominate that sitting judge/Board member for consideration to fill another judicial vacancy. *See* Nev. Const. art. 6, § 20. Although such a situation could present a potential conflict of interest on the part of a Commission member selected, no such situation is presented here. Further, the remote possibility of such a situation arising does not prevent a duly elected member of the Board, who is also a district judge, from participating in Board appointment decisions. Additionally, we note that such a potential conflict does not arise simply because of a Board member's position as a sitting judge, but could occur with respect to any member of the Board seeking judicial appointment. In short, we do not believe that any member of the Board who might be considered at some point for a nomination to fill a judicial vacancy should be disqualified from participating in the selection of Commission members.[4]

---

[4]The dissenting Justices have suggested that Judge Jones should not have participated in the Board's vote because Ms. FitzSimmons made donations to Judge Jones's election campaign, creating a conflict of interest for Judge Jones. Although this issue was raised before the Board, this issue was not raised in this court by Mr. O'Brien. We think it inappropriate to determine an issue that Mr. O'Brien has expressly elected not to raise before this court. Nevertheless, we are compelled to respond to the dissenting opinion. We have previously determined that an attorney's prior participation in a justice's campaign, through public endorsement and support of the justice or by serving as a campaign co-chairman in the justice's election, does not require the justice's recusal from a case in which that attorney is involved. *See* State, Dep't of Transp. v. Barsy, 113 Nev. 709, 941 P.2d 969 (1997); Ainsworth v.

Second, Mr. O'Brien argues that Mr. Dickerson should not have been allowed to participate in the vote on the issue of whether to rescind the Board's appointment of Ms. FitzSimmons, and should not be allowed to vote in any new selection process that might be ordered by this court. Mr. O'Brien argues that Mr. Dickerson has demonstrated his bias against Mr. O'Brien by his conduct in attempting to minimize the impact of his comments and in refusing to disclose the source of his false information. Mr. O'Brien argues further that Mr. Dickerson has a conflict of interest.

The pleadings before this court do not demonstrate that Mr. O'Brien was not selected because of a conflict of interest or bias on Mr. Dickerson's part. Further, although the process that led to the non-appointment of Mr. O'Brien to the Commission may not have been perfect, we are not convinced that it was so unfair as to warrant this court's intervention into the affairs specifically entrusted by the Nevada Constitution to the Board of Governors of the State Bar. *See* Nev. Const. art. 6, § 20(3)(b) & (4)(b). Accordingly, we deny this petition.

SPRINGER, C. J., concurs.

MAUPIN, J., concurring:

Although the majority correctly articulates the doctrine governing these matters, I am compelled to write separately.

The record indicates a dispute over the nature of comments made about Mr. O'Brien during the meeting of the Board of Governors of the State Bar at which membership on the Nevada Commission on Judicial Selection was first at issue. Regardless of the substance of the discussions, the mere mention of discipline proceedings, whether meant as rhetorical or not, had the potential effect of compromising Mr. O'Brien's chances of being selected. If, however, the allegation was in any way seriously considered, any board member could have then and there examined Mr. O'Brien's State Bar Association file to confirm or refute the allegation. Given that the board ultimately reconsidered the

Combined Ins. Co., 105 Nev. 237, 774 P.2d 1003 (1989), *cert. denied*, 493 U.S. 958 (1989). It follows that an attorney's prior support of a judge's campaign through campaign donations does not preclude the judge from participating in a non-judicial decision regarding the attorney, such as the appointment of the attorney to a commission.

Further, under the Nevada Constitution, the Board of Governors of the State Bar of Nevada has implied discretion to determine whether a Board member should be disqualified from voting in the selection of a commission member. *See* Nev. Const. art. 6, § 20. In this case, the Board, apparently, in its discretion, permitted Judge Jones to vote.

matter with full knowledge of the true facts, *that Mr. O'Brien has never been the subject of discipline proceedings,* it appears that such a review was unnecessary. Thus, because selection of attorney members of the Commission is entrusted to the Board of Governors of the State Bar by the Nevada Constitution, and because the Board did have all of the true facts at hand when the matter was ultimately decided, we must defer to its final decision.

It is unfortunate that the possibility of discipline proceedings concerning Mr. O'Brien ever became an issue, or even a "non-issue," in the board's deliberations. Regardless of the outcome of the vote, and regardless of the number of times the board revisits the issue, the process and both of these applicants for the position were unnecessarily compromised.

In writing separately, I wish to stress again that Mr. O'Brien is one of the most respected members of our profession here in Nevada. The observations of the majority bear repeating:

> [T]hat a serious ethical complaint was pending against Mr. O'Brien . . . could not have been further from the truth. [Footnote omitted.] Mr. O'Brien has been an active member of the State Bar of Nevada since 1969; no disciplinary complaint has ever been filed against him. Indeed, Mr. O'Brien served for seven years as a member of the Board of Governors of the State Bar of Nevada, and for one year as president of the state bar. He has also served as a U.S. Magistrate and as a member of the Nevada Commission on Judicial Discipline. *In short, Mr. O'Brien's record as an attorney and public servant is beyond reproach.*

(Emphasis added.)

ROSE, J., with whom YOUNG, J., joins, dissenting:

I would order those members of the Board of Governors who voted for FitzSimmons to file an answer to address the issue of whether two Board members voted with conflicts of interest, thereby nullifying the vote and requiring a re-election. Since the majority is not so inclined, I can only comment on the facts thus far presented.

As the majority recognizes, this court has exclusive jurisdiction and control over the State Bar of Nevada and the power to fashion an appropriate remedy if illegality or unfairness is noted in the State Bar's activities. It appears that two of the Board members had serious conflicts of interest when they voted for O'Brien's opponent in the initial vote and then on reconsideration. Without those two tainted votes, the result would have been in O'Brien's favor. Rather than deny the petition outright based on the refusal to exercise our plenary discretion, I would use the

power vested with this court to further inquire into what appears to be a fundamentally unfair election to one of the judiciary's most important commissions.

Numerous people in attendance at the Board of Governor's meeting heard Dickerson state that O'Brien had a serious attorney discipline matter pending against him. While later denied and explained by Dickerson, the fact remains that the very person who apparently slandered O'Brien provided the one vote margin for O'Brien's opponent. It seems obvious that the very person slandering an individual should not then participate in a vote when the person slandered is a candidate.

Judge Steve Jones voted to select FitzSimmons and then voted against a rehearing. Each vote prevailed by a one vote margin. Judge Jones had a clear conflict of interest and should have abstained. FitzSimmons donated $10,000 to Judge Jones' campaign for the Nevada Supreme Court last year, and her husband gave him another $10,000. In addition, FitzSimmons' law partner, Kermitt Waters, and his wife gave $95,000 to Judge Jones' campaign individually and through businesses they controlled. This is a grand total of more than $100,000 in campaign donations given to Judge Jones in the past year by FitzSimmons and her law partner.

This court has held that, as a general proposition, contributions by an attorney or a party to a judge's campaign do not disqualify the judge when the party or the attorney appear before the judge. In re Petition to Recall Dunleavy, 104 Nev. 784, 769 P.2d 1271 (1988). However, when the contribution is very large or greatly disproportionate to the contributions made by a similar class of contributors, then an appearance of impropriety should be recognized. Lawyers' contributions to judicial campaigns generally range from small contributions up to several thousand dollars. However, few are made by lawyers above the $5,000 level. A judge is compelled to run for office by the Nevada Constitution, and raising money to finance a campaign is an integral part of that process. Every judicial candidate I have known was thankful for all contributions made by lawyers, large or small. However, there does come a point when the amount of money contributed creates an appearance of impropriety, especially when the judge is ruling or voting on an issue critical to the lawyer contributor, as Judge Jones did in this case.

The contributions made by FitzSimmons, her partner, and their businesses to Judge Jones' campaign for election to the Nevada Supreme Court in 1996 totaled at least $115,000 and was more than one-fourth of the total money Judge Jones raised for that campaign. This amount would be considered an enormous contribution by any person or business, but especially when received

from two lawyers. Unless the Board members who voted for Judge Jones could persuade me otherwise, this certainly appears to present an obvious conflict of interest that should have prevented Judge Jones from voting in a contested election where FitzSimmons was a candidate. Judge Jones was asked not to participate in the vote for reconsideration because of this obvious conflict; he refused, and his vote was critical to preserving FitzSimmons' electoral victory.

My opinion that this matter should be pursued is based, in part, on the function of the Commission to which each candidate sought election. The Nevada Judicial Selection Commission was created by the Nevada Constitution to select the best candidates for judicial vacancies and recommend them to our Governor. The judge who is appointed is vested with enormous authority that affects the citizens of this state in a variety of ways, including, in some cases, the very decision of life or death.

Given the paramount importance of this Commission, we should all insist that its membership selection and operation be done by the letter of the law and be above reproach. We insist that a judge be fair and impartial and not participate in a case where doing so would present the appearance of impropriety and thus a conflict of interest. Why should the standard for the Commission who selects our judges be any less?

The petitioner has shown that members of the Board of Governors voted when they had apparent conflicts of interest, thus denying him the election. Recognizing that the slanderous remarks made about O'Brien were false is certainly appropriate but clearly an inadequate remedy. O'Brien asks only that a re-election be held and that those Board members with conflicts of interest not participate in it. He may win or lose, but we would be assured that the Commission's membership is not tainted by an improper election process. Fairness demands no less.