708 A.2d 667

**UNNAMED ATTORNEY**

**v.**

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND.**

**No. 78, Sept. Term, 1997.**

Court of Appeals of Maryland.

April 10, 1998.

Reconsideration Denied May 19, 1998.

Benjamin Lipsitz, Baltimore, for petitioner.

Melvin Hirshman, Bar Counsel, (Dolores O. Ridgell, Assistant Bar Counsel, Attorney Grievance Commission of Maryland, on brief) Crownsville, for respondent.

Before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, RAKER, WILNER, and CATHELL, JJ.

CATHELL, Judge.

Unnamed Attorney, appellant, appeals from an order of the Circuit Court for Baltimore County denying his motion to quash a subpoena, which was issued by Bar Counsel on behalf of the Attorney Grievance Commission of Maryland, appellee. The circuit court also ordered production of certain documents relative to appellant's representation of a client. We issued a writ of certiorari prior to briefing and argument in the Court of Special Appeals to address "[w]hether, the [a]ppellant, a member of the Maryland Bar, can avoid the production of documents pursuant to a subpoena issued by Bar Counsel by asserting a privilege against self-incrimination." [1]

## I. FACTS

The present case stems from appellant's representation of Ronald Price, a former high school teacher charged with various crimes arising out of his abuse of three students at Northeast High School in Anne Arundel County. Mr. Price was convicted of three counts of unnatural and perverted

---

**1.** This opinion shall address the Fifth Amendment privilege as it relates to the production of records and documents. An attorney's right to invoke the privilege against self-incrimination to refuse to testify during a disciplinary hearing is not at issue. We have recognized an attorney's right to do so in *Attorney Grievance Commission v. Unnamed Attorney,* 298 Md. 36, 43–45, 467 A.2d 517, 520–21 (1983). *See also Black v. State Bar,* 7 Cal.3d 676, 103 Cal.Rptr. 288, 499 P.2d 968 (1972); *Committee on Professional Ethics & Conduct of the Iowa State Bar Assn. v. Horn,* 379 N.W.2d 6 (Iowa 1985); *Sternberg v. State Bar,* 384 Mich. 588, 185 N.W.2d 395 (1971); *Mississippi State Bar v. Attorney–Respondent in Disciplinary Proceedings,* 367 So.2d 179 (Miss.1979).

sexual practices and one count of fourth degree sexual offense on 8 September 1993 and sentenced on 14 October 1993 to imprisonment for twenty-six years on the convictions. The Court of Special Appeals affirmed those convictions in an unreported opinion.

Mr. Price filed a complaint with the Attorney Grievance Commission alleging numerous instances of impropriety by appellant and the law firm in which he was a partner. In relevant part, Mr. Price's complaint charged: "They may well be guilty of criminal negligence due to their avarice, incompetence and conflict of interests." [2] Mr. Price's complaint also alleged that he and his wife had signed three contracts with appellant and sought an accounting with respect to money appellant may have received for Mr. Price's benefit from third parties.

On 28 March 1997, the Attorney Grievance Commission of Maryland served a subpoena on appellant's attorney. The subpoena compelled appellant to produce "ALL FILES, FINANCIAL RECORDS, LEDGER CARDS AND BANK STATEMENTS *pursuant to [his] representation of Ronald Price*, including any contracts with any third parties *in connection with [his] representation of Ronald Price.*" (Emphasis added.) Appellant moved to quash the subpoena alleging that the documents sought "will deprive him of his right against self-incrimination, in violation of both the Self–Incrimination Clause of the Fifth Amendment to the Constitution of the United States and Article 22 of the Maryland Declaration of Rights." [3] A hearing on appellant's Motion to Quash was

---

**2.** The Attorney Grievance Commission, through Bar Counsel, later informed appellant that it had no evidence that he engaged in criminal activity and that Mr. Price had withdrawn any such allegations from his complaint. Nevertheless, appellant continued to assert his Fifth Amendment privilege against self-incrimination with respect to the documents.

**3.** Appellant attempted to avoid production of the documents in this case only upon self-incrimination grounds; no attorney client privilege was raised pursuant to Md.Code (1974, 1995 Repl.Vol.), § 9–108 of the Courts & Judicial Proceedings Article. For a discussion of the invoca-

held on 14 July 1997. The circuit court denied appellant's motion.

Appellant filed a Notice of Appeal on 12 August 1997. The Attorney Grievance Commission, through Bar Counsel, petitioned this Court for a Writ of Certiorari to address whether appellant could prevent the production of the documents enumerated in the subpoena by asserting his privilege against self-incrimination. We granted a writ of certiorari on 16 October 1997 to address this issue prior to briefing and argument in the Court of Special Appeals.

## II. FIFTH AMENDMENT PRIVILEGE AS TO DOCUMENTS

The Fifth Amendment to the United States Constitution states that "[n]o person shall ... be compelled in any criminal case to be a witness against himself." Article 22 of the Maryland Declaration of Rights similarly provides that "no man ought to be compelled to give evidence against himself in a criminal case." [4]

The Fifth Amendment was held to protect an individual from the compelled production of his or her private documents in *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886). *Boyd* involved an in rem action against twenty-nine cases of plate glass alleged by the federal government to have been imported in violation of certain revenue statutes. A judge ordered the partners of the partnership that had im-

---

tion of this privilege to prevent the production of attorney records in the attorney disciplinary context, see *In re Kennedy*, 442 A.2d 79, 92 (Del.1982); *In re Rawson*, 113 N.M. 758, 759–60, 833 P.2d 235, 236–37 (1992).

4. Article 22 of the Maryland Declaration of Rights is generally in *pari materia* with the Fifth Amendment of the United States Constitution. *See Bhagwat v. State*, 338 Md. 263, 270–71 n. 9, 658 A.2d 244, 247 n. 9 (1995); *Choi v. State*, 316 Md. 529, 535–36 n. 3, 560 A.2d 1108, 1111 n. 3 (1989); *Adkins v. State*, 316 Md. 1, 6–7 n. 5, 557 A.2d 203, 205 n. 5 (1989); *In re Special Investigation No. 281*, 299 Md. 181, 194 n. 1, 473 A.2d 1, 7 n. 1 (1984); *Unnamed Attorney*, 298 Md. at 43 n. 1, 467 A.2d at 520 n. 1.

ported the glass to produce the relevant invoice. The partners produced the invoice, but claimed the document could not be used against them on the ground that such use would result in a violation of the self-incrimination clause of the Fifth Amendment. The Supreme Court agreed and held the invoice constituted a private paper that the government could not compel the partners to produce.

The holding in *Boyd*, however, has been limited severely by two theories, referred to as the collective entity doctrine and the required records exception, as well as a Supreme Court doctrinal shift in the protection afforded by the Fifth Amendment. We shall examine these three limitations below.

## A.   Collective Entity Doctrine

The origins of the collective entity doctrine can be traced to two cases. The first case, *Hale v. Henkel*, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906), held that corporations have no Fifth Amendment privilege. In *Hale*, a corporation was under investigation. A grand jury summoned an officer of the corporation to produce the corporation's books and records, which the officer refused to produce, claiming production of the documents would incriminate the corporation. The Court, holding that an officer of a corporation cannot assert a Fifth Amendment privilege for a corporation as to that corporation's books and records, reasoned:

If, whenever an officer or employee of a corporation were summoned before a grand jury as a witness he could refuse to produce the books and documents of such corporation, upon the ground that they would incriminate the corporation itself, it would result in the failure of a large number of cases where the illegal combination was determinable only upon the examination of such papers. Conceding that the witness was an officer of the corporation under investigation, and that he was entitled to assert the rights of the corporation with respect to the production of its books and papers, we are of the opinion that there is a clear distinction in this particular between an individual and a corporation,

and that the latter has no right to refuse to submit its books and papers for an examination at the suit of the state. . . .

. . . While an individual may lawfully refuse to answer incriminating questions unless protected by an immunity statute, it does not follow that a corporation, vested with special privileges and franchises, may refuse to show its hand when charged with an abuse of such privileges.

*Id.* at 74–75, 26 S.Ct. at 378–79, 50 L.Ed. at 665–66.

In the second case, *Wilson v. United States,* 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911), the Supreme Court limited an individual's ability to assert his Fifth Amendment privilege as to the books and records of a corporation, thus giving birth to what has become known as the collective entity doctrine. In *Wilson,* a grand jury issued a subpoena to United Wireless Telegraph Company, compelling it to produce copies of letters and telegrams made by the president of the company, Wilson. The subpoena was served on Wilson, as president of the company, and two other persons. Refusing to produce the records before the grand jury, Wilson asserted that the requested documents would tend to incriminate him and therefore he was not required to produce them. The lower court disagreed, and he was found in contempt. Citing to *Hale,* the Court held the custodian of corporate records did not have a Fifth Amendment privilege as to the contents of the records, even though the records tended to incriminate the individual. *See also Dreier v. United States,* 221 U.S. 394, 31 S.Ct. 550, 55 L.Ed. 784 (1911) (holding corporate officer subpoenaed to produce records of a corporation could not assert his Fifth Amendment privilege against self-incrimination with respect to the corporate records).

In *United States v. White,* 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944), the Court examined whether an officer of an unincorporated labor union could assert a Fifth Amendment privilege in the contents of the union's records in his possession. The Court held he could not. Explaining the rationale behind the collective entity doctrine, the Court stated:

The constitutional privilege against self-incrimination is essentially a personal one, applying only to natural individuals....

Since the privilege against self-incrimination is a purely personal one, it cannot be utilized by or on behalf of any organization, such as a corporation. Moreover, the papers and effects which the privilege protects must be the private property of the person claiming the privilege, or at least in his possession in a purely personal capacity. But individuals, when acting as representatives of a collective group, cannot be said to be exercising their personal rights and duties nor to be entitled to their purely personal privileges. Rather they assume the rights, duties and privileges of the artificial entity or association of which they are agents or officers and they are bound by its obligations. In their official capacity, therefore, they have no privilege against self-incrimination. And the official records and documents of the organization that are held by them in a representative rather than in a personal capacity cannot be the subject of the personal privilege against self-incrimination, even though production of the papers might tend to incriminate them personally. Such records and papers are not the private records of the individual members or officers of the organization.

*Id.* at 698–99, 64 S.Ct. at 1251, 88 L.Ed. at 1545–46 (citations omitted).

In *Bellis v. United States*, 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974), the Court applied the collective entity doctrine to small partnerships. Bellis, the senior partner of a disbanded three-partner law firm, was served with a subpoena ordering him to produce the partnership records in his possession. The federal district court held an individual's Fifth Amendment privilege did not extend to a partnership's financial books and records. The Court of Appeals for the Third Circuit agreed, and the Supreme Court affirmed. The Court noted a partnership, like a corporation, had an existence of its own apart from its members. It also recognized "that the privilege against compulsory self-incrimination should be 'lim-

ited to its historic function of protecting only the natural individual from compulsory incrimination through his own testimony or personal records.' " *Id.* at 89–90, 94 S.Ct. at 2184, 40 L.Ed.2d at 684 (quoting *White,* 322 U.S. at 701, 64 S.Ct. at 1252, 88 L.Ed. at 1547 (1944)). The Court concluded: "We think it is similarly clear that partnerships may and frequently do represent organized institutional activity so as to preclude any claim of Fifth Amendment privilege with respect to the partnership's financial records." *Id.* at 93, 94 S.Ct. at 2186, 40 L.Ed.2d at 687.

This Court applied the collective entity doctrine to a professional association in *In re Special Investigation No. 281,* 299 Md. 181, 473 A.2d 1 (1984). In that case, a dentist formed a professional association in 1981. Prior to that time, the dentist operated as a sole practitioner. Pursuant to an investigation of alleged medicaid fraud, a grand jury served a subpoena duces tecum on the dentist as the custodian of records of the professional association. The subpoena required production of the medical records of specific patients for the years 1979 to 1982 and daily journal sheets from 1 July 1979 to 30 April 1983. Relying on the Fifth Amendment privilege against self-incrimination, the dentist moved to quash the subpoena. The trial court denied the dentist's motion.

On appeal to this Court, we addressed "whether the dentist's preincorporation patient records may be produced without violating his Fifth Amendment privilege against self-incrimination." *Id.* at 194, 473 A.2d at 7 (footnote omitted). The dentist conceded that he had no Fifth Amendment privilege as to the records of the professional association. Holding the dentist did not have a Fifth Amendment privilege as to the patient records created while he was a sole practitioner and relying, in substantial part, on the Supreme Court's discussion of the collective entity doctrine in *Bellis, supra,* we stated:

> The patient records here at issue were a part of the warp and woof of the professional association. We believe the trial judge was correct in his conclusion that title to those patient records passed to the professional association once the records were turned over to it. These are no longer the

records of the individual dentist. Hence, he has no Fifth Amendment right or privilege in those records.

*Id.* at 198, 473 A.2d at 10.

### B. Required Records Exception

Also limiting *Boyd* and explained in *Wilson* is the required records exception. The *Wilson* Court noted that the custodian of public records could not assert a Fifth Amendment privilege in those records even if the records would incriminate the public official. Although the Court did not utilize the required records exception to reach its holding, it went on to expand the doctrine to cover not only public officials and public records, but in some instances an individual's business records. The Court explained:

> The principle [of the required records exception] applies not only to public documents in public offices, but also to records required by law to be kept in order that there may be suitable information of transactions which are the appropriate subjects of governmental regulation, and the enforcement of restrictions validly established. There the privilege which exists as to private papers cannot be maintained.

*Wilson,* 221 U.S. at 380, 31 S.Ct. at 544, 55 L.Ed. at 779.

The required records exception was applied to an individual's business records in *Shapiro v. United States,* 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948). William Shapiro, a wholesaler of fruit and produce, was served with a subpoena requiring him to appear before attorneys of the Office of Price Administration and produce the books, records, contracts, and other records of sales he had made for a certain month. Shapiro appeared before the attorneys and turned over the records. He ultimately was convicted of violating the Emergency Price Control Act. Shapiro asserted his conviction was in violation of the Fifth Amendment privilege against self-incrimination. The Supreme Court, citing *Wilson,* noted the public documents exception to the Fifth Amendment applied not only to public documents, but also to private records required to be kept by law regarding transactions that are the

subject of governmental regulation. The Emergency Price Control Act required Shapiro to maintain various records regarding the transactions of his business, so the required records exception applied and prevented Shapiro from claiming a Fifth Amendment privilege in the records.

The Supreme Court described the appositeness of the required records doctrine in three cases decided on the same day: *Marchetti v. United States*, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968); *Grosso v. United States*, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968); *Haynes v. United States*, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968). In these cases, the Court established a three-part test to determine the applicability of the required records doctrine. The Court stated that in order for the doctrine to apply, the purpose of the inquiry had to be regulatory, the information had to be obtained through records that the party asserting the privilege regularly maintained, and the documents had to have a public aspect. *See Grosso*, 390 U.S. at 65–66, 88 S.Ct. at 712, 19 L.Ed.2d at 910–11. The Court held in each of the three cases that the elements were not met, primarily because the area of inquiry was not regulatory, but instead directed at inherently suspect activities. *See also Curran v. Price*, 334 Md. 149, 175, 638 A.2d 93, 106 (1994) (holding that the required records doctrine was not applicable to Maryland's "Son of Sam" statute because the statute was not regulatory but concerned an inherently criminal area).

We applied the required records exception in *Andresen v. Bar Association*, 269 Md. 313, 305 A.2d 845 (1973). In *Andresen*, the Bar Association of Montgomery County sought an audit of an attorney's accounts relating to funds received in connection with a real estate closing. A Maryland statute authorized any duly organized bar association to petition the court to order an audit of accounts relating to real estate transactions.[5] Andresen asserted his Fifth Amendment privi-

---

5. Maryland Code (1957, 1966 Repl.Vol., 1971 Supp.), Art. 21, § 42 was the applicable statute in *Andresen*. It was recodified as Maryland Code (1957, 1973 Repl.Vol.), Art. 21, § 7–106 in 1973. Section 7–106 of

lege against self-incrimination would be violated *if* he were compelled to submit his accounts to the audit. The lower court ordered the audit and we affirmed. In our opinion, we noted that there were three elements to the required records exception to the Fifth Amendment privilege against self-incrimination:

(1) the records required to be kept are of the same kind customarily kept by a person engaged in such activity; (2) the records have "public aspects" beyond the mere fact that the Government desires the information and has formalized its demand by statute, rule, or regulation; (3) the records relate to an essentially non-criminal and regulatory area of inquiry.

*Id.* at 324, 305 A.2d at 852. In addition to the Maryland statute giving bar associations authority to conduct an audit of real estate settlement records, Maryland Rule DR 9–102(B)(3) [6] required attorneys to maintain records of all funds and other property of a client over which a lawyer had possession. We acknowledged that unlike the "classic proto-type of the required records doctrine," *id.* at 327, 305 A.2d at 853, no pervasive regulatory scheme then existed regarding the reporting or inspection of client records and attorney accounts. Nevertheless, we stated that the facts were "close enough in principle to warrant application of the doctrine." [7] *Id.* at 327, 305 A.2d at 853. Applying the three elements of the required records exception, we stated:

---

Article 21 was repealed by 1974 Md.Laws, Chap. 12, at 249. A similar provision was enacted by 1974 Md.Laws, Chap. 12, at 307–10, as section 7–106 of the Real Property Article. The current version still permits a duly organized bar association to petition the court for an audit of such records. *See* Md.Code (1973, 1996 Repl.Vol.), § 7–106 of the Real Property Article.

**6.** Maryland Rule DR 9–102(B)(3), which was in effect at the time of *Andresen,* is similar to Rule 1.15(a) of the Maryland Lawyers' Rules of Professional Conduct.

**7.** In a footnote, we stated that it was unnecessary for us to "reach the issue of whether either the statute or the rule, standing alone ... would warrant application of the required records doctrine." *Andresen,* 269 Md. at 328 n. 8, 305 A.2d at 854 n. 8.

First, the records required are, obviously, records customarily kept by lawyers, necessary to a proper accounting of monies held for others. Secondly, the records have "public aspects" making them at least analogous to public records. They detail the use of monies which the lawyer holds for others in an area properly regulated by the State.... Thirdly, the records are not required of an "inherently suspect class" in an area permeated with criminal violations....

*Id.* at 328–29, 305 A.2d at 853. Therefore, the required records exception prevented *Andresen* from asserting protection by the Fifth Amendment.

## C. The Supreme Court's Doctrinal Shift

A further shift in Supreme Court philosophy regarding the relationship between the Fifth Amendment privilege against self-incrimination and documents and records emerged in *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). In that case, a taxpayer obtained from his accountant certain documents, which were then given to his attorney, who was assisting the taxpayer with an investigation being conducted by the Internal Revenue Service. The Internal Revenue Service issued a subpoena demanding that the attorney produce the work papers, tax returns, and correspondence between the taxpayer and his accountant. The taxpayer claimed the accountant's papers relating to the taxpayer were protected by the Fifth Amendment.

The Supreme Court first addressed whether the client had a Fifth Amendment privilege in the various documents sought by the Internal Revenue Service. Holding the taxpayer had no such privilege, the Court stated:

It is also clear that the Fifth Amendment does not independently proscribe the compelled production of every sort of incriminating evidence but applies only when the accused is compelled to make a *testimonial* communication that is incriminating....

. . . .

A subpoena served on a taxpayer requiring him to produce an accountant's work papers in his possession without doubt involves substantial compulsion. But it does not compel oral testimony; nor would it ordinarily compel the taxpayer to restate, repeat, or affirm the truth of the contents of the documents sought. Therefore, the Fifth Amendment would not be violated by the fact alone that the papers on their face might incriminate the taxpayer, for the privilege protects a person only against being incriminated by his own compelled testimonial communications. The accountant's work papers are not the taxpayer's. They were not prepared by the taxpayer, and they contain no testimonial declarations by him. Furthermore, as far as this record demonstrates, the preparation of all of the papers sought in these cases was wholly voluntary, and they cannot be said to contain compelled testimonial evidence, either of the taxpayers or of anyone else. The taxpayer cannot avoid compliance with the subpoena merely by asserting that the item of evidence which he is required to produce contains incriminating writing, whether his own or that of someone else.

The act of producing evidence in response to a subpoena nevertheless has communicative aspects of its own, wholly aside from the contents of the papers produced. Compliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by the taxpayer. It also would indicate the taxpayer's belief that the papers are those described in the subpoena. The elements of compulsion are clearly present, but the more difficult issues are whether the tacit averments of the taxpayer are both "testimonial" and "incriminating" for purposes of applying the Fifth Amendment. These questions perhaps do not lend themselves to categorical answers; their resolution may instead depend on the facts and circumstances of particular cases or classes thereof.

*Id.* at 408–10, 96 S.Ct. at 1579–81, 48 L.Ed.2d at 54–56 (citations omitted) (footnote omitted).

The Court then examined whether the act of producing the records and documents would constitute testimonial self-incrimination. It noted that in order for the compelled production to constitute self-incrimination, the act of producing the papers prepared by an accountant and in the taxpayer's possession had to be both testimonial and incriminating. The Court, holding that production of the documents was not testimonial, reasoned:

> The papers belong to the accountant, were prepared by him, and are the kind usually prepared by an accountant working on the tax returns of his client. Surely the Government is in no way relying on the "truth-telling" of the taxpayer to prove the existence of or his access to the documents. The existence and location of the papers are a foregone conclusion and the taxpayer adds little or nothing to the sum total of the Government's information by conceding that he in fact has the papers.

*Id.* at 411, 96 S.Ct. at 1581, 48 L.Ed.2d at 56 (citation omitted). The Court also noted that the existence of the documents sought were no more at issue than in the cases discussing the collective entity doctrine. With respect to whether the production of the documents themselves was incriminating, the Court noted that obtaining assistance from an accountant was not illegal. Likewise, possession of such documents was not incriminating.

The impact of *Fisher* is significant with respect to an individual's Fifth Amendment privilege as to records and documents. After *Fisher*, the focus of the Fifth Amendment privilege with respect to records and documents became not the actual documents, but instead the act of producing the documents.[8] This shift in focus is exemplified by *United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984) (*Doe I* ) and *Doe v. United States*, 487 U.S. 201, 108

---

8. Commentators are in accord with this view. *See, e.g.,* Samuel A. Alito, *Documents and the Privilege Against Self–Incrimination*, 48 U.Pɪᴛᴛ.L.Rᴇᴠ 27, 29 (1986) ("Under this new approach, the privilege does not shield the contents of preexisting documents but may protect the act of producing them.").

S.Ct. 2341, 101 L.Ed.2d 184 (1988) (*Doe II* ). *See also Curran,* 334 Md. at 175, 638 A.2d at 106 ("[A] person may not claim the privilege based on 'incrimination that may result from the contents or nature of the thing demanded.' ").

In *Doe I,* a grand jury issued several subpoenas demanding the production of telephone records, bank records, and business records of numerous sole proprietorships owned by Doe. The Court framed the issue as "whether, and to what extent, the Fifth Amendment privilege against compelled self-incrimination applies to the business records of a sole proprietorship." *Id.* at 606, 104 S.Ct. at 1239, 79 L.Ed.2d at 556. After discussing *Fisher* extensively, the Court stated that Doe was not compelled to prepare the documents nor would he be forced to "restate, repeat, or affirm the truth of their contents." *Id.* at 612, 104 S.Ct. at 1242, 79 L.Ed.2d at 560. The Court noted, however, that the subpoenas could compel Doe, the holder of the documents, to perform an act that could have testimonial aspects. Deferring to both lower courts' factual findings that the act of producing the documents would involve testimonial self-incrimination, the Court held Doe's Fifth Amendment privilege against self-incrimination had been violated.

In *Doe II,* Doe was ordered by a federal district court to execute a number of consent forms that would have given the government access to foreign bank records. Doe refused and was found in contempt. The Fifth Circuit Court of Appeals affirmed without an opinion. *See In re Doe,* 812 F.2d 1404 (5th Cir.1987). On appeal to the Supreme Court, that Court examined "whether the compelled execution of a consent form directing the disclosure of foreign bank records is inconsistent with the Fifth Amendment." *Doe II,* 487 U.S. at 206, 108 S.Ct. at 2345, 101 L.Ed.2d at 194 (footnote omitted). Noting that the act of executing the forms would violate the self-incrimination privilege if execution were both testimonial and incriminating, the Court held "neither the form, nor its execution, communicates any factual assertions, implicit or explicit, or conveys any information to the Government" and therefore

it was not compelled testimony. *Id.* at 215, 108 S.Ct. at 2350, 101 L.Ed.2d at 200.

Although the Supreme Court's focus has shifted from the contents of the records themselves to the act of production, the Court has not limited either the required records exception or the collective entity doctrine. They continue to retain their vitality even with respect to the act of production.

In *Braswell v. United States,* 487 U.S. 99, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988), the Court addressed whether, in light of *Fisher,* the custodian of corporate records could resist a subpoena on the ground that the act of producing the documents would incriminate him. Randy Braswell operated his business as a sole proprietorship between 1965 and 1980. In 1980, he incorporated the business, and in 1981, he formed a second corporation funded by the stock of the first corporation. Braswell was the sole shareholder of both corporations. In 1986, a federal grand jury issued a subpoena to Braswell requiring him to produce the books and records of the corporation. Braswell moved to quash the subpoena on the ground that the act of producing the records would tend to incriminate him, in violation of the Fifth Amendment.

Braswell argued that *Fisher,* with its focus on the act of production, had made the collective entity doctrine obsolete because that doctrine focused on the contents of the documents subpoenaed, not on the act of production. Acknowledging it had "embarked upon a new course of Fifth Amendment analysis," *Braswell,* 487 U.S. at 109, 108 S.Ct. at 2291, 101 L.Ed.2d at 109, the Court disagreed with Braswell that this new course had "rendered the collective entity rule obsolete." *Id.* The Court specifically noted the agency rationale underlying the collective entity doctrine had survived *Fisher.* Ultimately, it held a custodian of records could not assert a Fifth Amendment privilege as to the production of records even though the act of production would incriminate him personally. The Court, however, limited the government's use of the custodian's act of production, stating:

> Because the custodian acts as a representative, the act is deemed one of the corporation and not the individual.

Therefore, the Government concedes, as it must, that it may make no evidentiary use of the "individual act" against the individual.... The Government has the right, however, to use the corporation's act of production against the custodian.

*Braswell,* 487 U.S. at 118, 108 S.Ct. at 2295, 101 L.Ed.2d at 114.

Like the collective entity doctrine, the required records exception to the Fifth Amendment privilege against self-incrimination has survived the Supreme Court's act of production analysis set forth in *Fisher.* See *Baltimore City Department of Social Services v. Bouknight,* 493 U.S. 549, 110 S.Ct. 900, 107 L.Ed.2d 992 (1990); *Shapiro, supra,* and *California v. Byers,* 402 U.S. 424, 91 S.Ct. 1535, 29 L.Ed.2d 9 (1971).[9]

As illustrated by *Fisher, Doe I,* and *Doe II,* the focus of the resolution of a Fifth Amendment claim as to records and documents is no longer on the records or documents themselves. The focus following *Fisher* is on the act of production and whether such act is a testimonial assertion that could prove incriminating to an individual. The cases teach us that the collective entity doctrine and the required records exception continue to retain their vitality following *Fisher* and its progeny. With these principles in mind, we shall resolve the case at hand.

### III. DISCUSSION

The subpoena issued by the Attorney Grievance Commission required appellant to produce "ALL FILES, FINAN-

---

**9.** In *Byers,* the Court examined whether a hit and run statute, which required the driver of a motor vehicle involved in an accident to stop and give certain information, violated an individual's Fifth Amendment right against self-incrimination. Although not specifically applying the three elements of the required records doctrine, the Court noted that the statute was directed to all persons who drove a motor vehicle within the state, and was not directed at a group of persons inherently suspect of criminal activity. The Court also noted compliance with the statute was neither incriminating, due to the nature of the information an individual was required to provide, nor testimonial.

CIAL RECORDS, LEDGER CARDS AND BANK STATE-MENTS pursuant to [his] representation of Ronald Price, including any contracts with any third parties in connection with [his] representation of Ronald Price." Appellant argues he is entitled to assert a Fifth Amendment privilege as to the documents sought by the Attorney Grievance Commission. He cites to *Boyd* and *Spevack v. Klein*, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967), to establish his Fifth Amendment privilege in the records. Furthermore, appellant asserts he demonstrated a valid and sufficient basis for raising the privilege.

The Attorney Grievance Commission argues appellant did not meet his burden of establishing a substantial and real threat of criminal prosecution. Attorney Grievance Commission further argues that even if appellant demonstrated a sufficient basis for asserting the privilege, appellant, as the custodian of the business records, could not assert a privilege to avoid producing them as directed by the subpoena.

For purposes of this discussion, we shall assume that appellant demonstrated sufficiently a basis for raising the privilege. Accordingly, we need only examine whether appellant had a Fifth Amendment privilege in the documents sought by the subpoena.

Appellant's reliance on *Boyd*, in which the court held a person could not be forced to produce his private papers,[10] is

———

10. Because we approach this issue assuming that the documents in this case were the attorney's documents, we deem it unnecessary to address whether papers contained in client files are private papers of the attorney. Documents in client files may belong to the client, not the attorney. Support for such a view can be found in Rule 1.16(d) of the Maryland Lawyers' Rules of Professional Conduct. That rule states: "Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as ... surrendering papers and property to which the client is entitled.... The lawyer may retain papers relating to the client to the extent permitted by other law." Maryland Code (1989, 1995 Repl.Vol.), § 10–501 of the Business Occupations and Professions Article is the relevant statutory provision permitting an attorney to retain a client's property on which the attorney has a valid lien. We are unaware of the existence of any lien on the client files in this case. As we resolve this

unpersuasive in light of the later decisions of the Supreme Court, which we have discussed *supra.* In *Fisher,* the Court noted "[s]everal of Boyd's express or implicit declarations have not stood the test of time." *Fisher,* 425 U.S. at 407, 96 S.Ct. at 1579, 48 L.Ed.2d at 54. Furthermore,

> to the extent, however, that the [*Boyd* ] rule against compelling production of private papers rested on the proposition that seizures of or subpoenas for 'mere evidence,' including documents, violated the Fourth Amendment and therefore also transgressed the Fifth, the foundations for the rule have been washed away. In consequence, the prohibition against forcing the production of private papers has long been a rule searching for a rationale consistent with the proscriptions of the Fifth Amendment against compelling a person to give 'testimony' that incriminates him.

*Id.* at 409, 96 S.Ct. at 1580, 48 L.Ed.2d at 55 (citations omitted). The Court went on to articulate the rationale behind the Fifth Amendment. It stated the Fifth Amendment protects compelled testimony, and, in the records context, it is the compelled act of production that may be testimonial, not the substance of the documents themselves. This compelled production of documents therefore, under some limited circumstances in which the productive act is itself evidence of criminality, may violate the Fifth Amendment. Otherwise, generally, it does not.

Appellant's reliance on *Spevack* likewise is misplaced. He cites to that case for the proposition that "the Supreme Court has specifically said that the Fifth Amendment applies to prevent self-incrimination in attorney disciplinary proceedings." The Supreme Court's plurality opinion in *Spevack,* however, did not address the applicability of the Fifth Amendment to attorney disciplinary proceedings because the lower court had not questioned the applicability of the Fifth Amendment to attorney disciplinary proceedings. The lower court disbarred the attorney simply because he invoked the privi-

---

case on other bases, it is not necessary to determine to whom the papers belong as between the attorney and the client.

lege against self-incrimination. The Supreme Court, noting that the Fifth Amendment was applicable to the States by way of the Fourteenth Amendment, held that an attorney could not be disbarred for merely invoking the privilege. The Court did not address whether any of the exceptions to the Fifth Amendment were applicable. In fact, Justice Fortas, in his concurring opinion, indicated he would have found the Fifth Amendment inapplicable to the records of the attorney on the basis of the required records doctrine. *See Spevack,* 385 U.S. at 520, 87 S.Ct. at 630–31, 17 L.Ed.2d at 580.

An examination of *Fisher* and its progeny makes clear that with regard to a subpoena seeking production of documents, the Fifth Amendment is not violated simply because the papers, on their face, might incriminate the individual because the privilege protects an individual only from being incriminated by his own compelled testimonial communications. It is the act of production, under certain limited circumstances, that may be testimonial and may incriminate the individual who produces the records. This is because the act of production may have communicative aspects. Production may demonstrate that the individual has possession or control over records or other items for which it is criminal for the attorney to have possession or retain control.[11] Additionally, it may show that the individual believes the records or other items to be those sought by the subpoena.

The Supreme Judicial Court of Massachusetts has examined, in the context of an attorney disciplinary investigation, whether the act of producing documents was testimonial and therefore protected by the privilege against self-incrimination. The court, declining to hold production of the documents would be testimonial or incriminating, stated:

---

11. For example, a client may give his or her attorney items that have been stolen. Maryland Code (1957, 1996 Repl.Vol.), Art. 27, § 341 makes it crime for a person to receive stolen property. In such an instance, turning over the items would show that the attorney had possession of the items, and therefore the act of production would be incriminating.

> Production of the documents is an admission that the records exist, that they are in the possession of the person and that they are authentic; such an admission could be incriminating. Since the records sought in the present case are required by statute or rule, there is nothing incriminating in the fact that they exist and are in the possession of Mr. Kenney. Production does not compel oral testimony nor does it compel Mr. Kenney "to restate, repeat, or affirm the truth of the contents of the documents sought."

*In re Kenney,* 399 Mass. 431, 441, 504 N.E.2d 652, 658 (1987) (quoting *Fisher,* 425 U.S. at 409, 96 S.Ct. at 1580, 48 L.Ed.2d at 55) (citations omitted). *Cf. In re Maurice,* 73 F.3d 124, 126 (7th Cir.1995) (holding an attorney did not have a Fifth Amendment privilege so as to prevent production to the court of a list of monetary sanctions imposed by other state and federal courts and the amounts paid on such court-imposed sanctions).

In the case *sub judice,* it is undisputed that appellant represented Mr. Price in a criminal trial and in other matters. The documents requested by the Attorney Grievance Commission are the type normally kept by an attorney during the course of representation of his or her client. Additionally, it is a "foregone conclusion" that appellant has possession and control of the client records and financial records of the partnership. It is not criminal to possess or control such records. Accordingly, the existence and possession of the records has no testimonial significance. Therefore, the production of the documents is not incriminating for purposes of the Fifth Amendment.

What appellant fears is the contents of the records, not any criminal liability solely arising out of the possession of these documents. Under *Fisher,* appellant has no Fifth Amendment privilege with respect to production of the records. Possession of the records is not a criminal act and, under the circumstances here present, could not be a criminal act.

Even if we were to assume that the act of producing the documents was both testimonial and incriminating, appellant

would have no Fifth Amendment privilege so as to avoid compliance with the subpoena. Under the circumstances of this case, both the collective entity doctrine and the required records doctrine, which survive *Fisher*, prevent appellant from relying on his Fifth Amendment privilege to avoid producing the records. We further explain the applicability of these two doctrines with regard to the act of production.

Although the subpoena did not contain the name of the law firm in which appellant practices law, it sought from appellant production of files, financial records, ledger cards, and bank statements with respect to appellant's representation of Mr. Price. It is reasonable to presume that a subpoena requesting the production of the types of records sought in this case from a partner or an attorney in a law firm is a request for the records of the firm with respect to requested subject. A subpoena directed at an attorney of a firm for records relating to one or more of the attorney's clients is served upon the attorney as the custodian of his client's records, which incidentally are also the firm's records. Accordingly, although the subpoena did not mention the firm or appellant in his capacity as custodian, the subpoena was served upon him as custodian of the records relating to his representation of Mr. Price.

In *Braswell*, the Supreme Court noted that the collective entity doctrine is alive and well following *Fisher*. Thus, any Fifth Amendment claim an individual may assert against production of a collective entity's records is not viable under *Braswell*. The Supreme Court explicitly held in that case that a custodian of records of a collective entity is not entitled to resist a subpoena on the ground that production of the documents may incriminate the custodian individually. Appellant, therefore, as a record custodian of the firm, a collective entity under *Bellis*, may not resist the subpoena on the ground that production of the documents may incriminate him. We perceive no reason to make any distinction with respect to how we shall treat the Fifth Amendment privilege against self-incrimination in matters relating to lawyers and the business

entities of which they are a part. In this case, the records relating to Mr. Price are the records of the partnership and must be produced pursuant to the collective entity doctrine. *See also In re Zisook*, 88 Ill.2d 321, 58 Ill.Dec. 786, 430 N.E.2d 1037 (1982), *cert. denied*, 457 U.S. 1134, 102 S.Ct. 2962, 73 L.Ed.2d 1352 (1982) (holding that attorneys of a professional corporation could not invoke the privilege against self-incrimination as to the corporate records, which included client files, in their possession).

■ We next examine the applicability of the required records exception to the facts of this case. We shall address the issue we found unnecessary to resolve in *Andresen*, namely, whether the rules of professional conduct standing alone warrant application of the required records doctrine. We hold the Maryland Rules and Maryland Lawyers' Rules of Professional Conduct sufficiently regulate the conduct of attorneys with regard to client matters such that, under the required records doctrine, an attorney cannot claim a Fifth Amendment privilege in the records relating to his or her client.

■ In order for the required records doctrine to apply, three elements must be met. First, the purpose of the inquiry must be regulatory, not criminal. Second, the records or documents sought must be of the type customarily required to be kept by the regulated party. Finally, the records or documents must have a public aspect.

Rule 1.15(a) of the Maryland Lawyers' Rules of Professional Conduct (MLRPC) provides:

A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. *Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.* [Emphasis added].

Chapter 600 of title 16 of the Maryland Rules provides extensive regulation with regard to attorney trust accounts. For example, Rule 16–603 requires an attorney to maintain a trust account if the attorney receives funds for the benefit of a client or third person. Maryland Rule 16–605 requires certain actions by the attorney before a trust account can be established. Rule 16–606 provides for the proper designation of a trust account.

Chapter 700 of title 16 of the Maryland Rules relates to the Attorney Grievance Commission. One of the purposes of the Commission is to discipline members of the bar. In order to do so, the Attorney Grievance Commission must conduct an investigation. To that extent, Bar Counsel "may issue a subpoena to compel the production of designated documents or other tangible things." Md.Rule 16–704(c).

Other disciplinary rules adopted by this Court regulate the conduct of attorneys. For example MLRPC 1.2(a) requires the attorney to "abide by a client's decisions concerning the objectives of representation." An attorney must "act with reasonable diligence and promptness in representing a client." MLRPC 1.3. MLRPC 1.4 requires an attorney to keep his or her clients informed about the status of the representation. The MLRPC is replete with additional examples of the pervasive regulation of attorneys established by this Court.

■ Examining the three elements of the required records doctrine leads us to conclude that the doctrine applies in this instance. The Maryland Rules, MLRPC, and rules relating to admission to the Bar demonstrate that the purpose of the Attorney Grievance Commission's inquiry is regulatory. Furthermore, this Court has the "inherent Constitutional authority to regulate the practice of law." *Post v. Bregman,* 349 Md. 142, 163, 707 A.2d 806, 816 (1998). Second, the records and documents sought to be obtained by the subpoena are required and customarily kept by persons engaging in the practice of law. MLRPC 1.15 requires an attorney to keep complete records of transactions that involve funds of a client or third parties. Third, the records subpoenaed have public

aspects. We have noted on numerous occasions that one of the purposes of attorney disciplinary proceedings is to protect the public. *Attorney Grievance Comm'n v. Adams,* 349 Md. 86, 98, 706 A.2d 1080, 1086 (1998); *Attorney Grievance Comm'n v. Awuah,* 346 Md. 420, 435, 697 A.2d 446, 454 (1997). Furthermore, "[t]he [legal] profession has a responsibility to assure that its regulations are conceived in the public interest.... Every lawyer is responsible for observance of the Rules of Professional Conduct.... Neglect of these responsibilities compromises the independence of the profession and the public interest which it serves." MLRPC Preamble.

Other state courts addressing an attorney's ability to invoke the Fifth Amendment privilege against self-incrimination with respect to documents and records likewise hold that the required records exception is applicable. The Supreme Court of Florida, in *Florida Bar v. White,* 384 So.2d 1266, 1267 (Fla.1980), adopted a referee's report, which provided:

> The records involved in the instant case are required to be maintained by The Florida Bar and the Integration Rule. These records are deemed to be affected with a public interest, necessary to be maintained for the protection of the public as well as The Florida Bar. The privilege arising from the Fifth Amendment through the Fourteenth Amendment is not applicable thereto.

In *In re Kennedy,* 442 A.2d 79 (Del.1982), the Delaware Supreme Court relied in part on our opinion in *Andresen,* 269 Md. at 313, 305 A.2d 845, to establish the applicability of the required records doctrine to attorney records. Although the attorney failed to assert his Fifth Amendment Rights as to the records, the Delaware Supreme Court stated: "We agree with the statement of the law made in *Andresen* and so could, for that reason, conclude that the records here in issue are required to be maintained by the Rules adopted by this Court in its unquestioned authority to set minimum standards of conduct for members of the Bar...." *In re Kennedy,* 442 A.2d at 89. *See also Louisiana State Bar Ass'n v. Chatelain,* 513 So.2d 1178, 1183 (La.1987) ("The records which were

requested by subpoena duces tecum in this case meet the requirements of the 'required records doctrine'...."); *In re Kenney*, 399 Mass. at 438, 504 N.E.2d at 657 ("We agree with the single justice that the documents in question fall within the 'required records' exception....").

The Rules of Professional Responsibility and Maryland Rules demonstrate the pervasive regulation of attorneys by this Court. Production of the documents requested in this case is required as part of a noncriminal regulatory regime. Accordingly, for this additional reason, appellant cannot resist the subpoena on the ground that production of the documents violated his privilege against self-incrimination.

## IV. CONCLUSION

Appellant is not entitled to claim a Fifth Amendment privilege against self-incrimination to avoid production of the documents sought by the subpoena. The act of producing the records is neither testimonial nor incriminating. Additionally, appellant, as the custodian of records of the partnership in which he practices law, may not claim that the records of the partnership may incriminate him individually. Moreover, under the Maryland Rules and MLRPC, production of the documents is part of a noncriminal regulatory regime. Appellant, for all of the reasons we have stated, may not resist a subpoena as to the records on the ground that production may violate his Fifth Amendment privilege against self-incrimination.

**JUDGMENT AFFIRMED; APPELLANT TO PAY COSTS.**