133 Nev., Advance Opinion 96

IN THE SUPREME COURT OF THE STATE OF NEVADA

LIBORIUS I. AGWARA,
Petitioner,
vs.
THE STATE BAR OF NEVADA; AND
SOUTHERN NEVADA DISCIPLINARY
BOARD,
Respondents.

No. 70888

**FILED**

DEC 07 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Original petition for a writ of mandamus or prohibition challenging two subpoenas duces tecum served on petitioner.

*Petition granted in part and denied in part, with instructions.*

William B. Terry, Chartered, and William B. Terry, Las Vegas,
for Petitioner.

State Bar of Nevada and Stephanie A. Tucker Barker and Janeen V. Isaacson, Las Vegas,
for Respondents.

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, DOUGLAS, J.:

In this original petition for a writ of mandamus or prohibition we are asked to consider whether an attorney can assert his Fifth Amendment right against self-incrimination to quash subpoenas issued by the State Bar that seek production of client accounting records and tax records. With regard to the requested client accounting records, we adopt

the three-prong test under *Grosso v. United States*, 390 U.S. 62 (1968), to conclude that the right against self-incrimination does not protect petitioner from disclosure. However, with regard to the requested tax records, we conclude that the Southern Nevada Disciplinary Board must hold a hearing to determine how the subpoenaed tax records are relevant and material to the State Bar's allegations that petitioner mismanaged his client trust account and whether there is a compelling need for those records. Accordingly, we deny the petition in part and grant it in part.

## FACTS AND PROCEDURAL HISTORY

In April 2014, petitioner Liborious I. Agwara, Esq., testified at his personal bankruptcy proceedings that he had not implemented a reliable or identifiable system of accounting for his client trust account. Counsel for petitioner's bankruptcy proceedings and the presiding bankruptcy judge advised respondent State Bar of Nevada of petitioner's potential ethical violations. As a result, the State Bar opened a grievance file to investigate petitioner's trust account management. Moreover, the bankruptcy court froze petitioner's Nevada State Bank trust account.

The State Bar then obtained petitioner's trust account records from Nevada State Bank, which indicated that he transacted client monies through a Wells Fargo Bank operating account while his Nevada State Bank trust account was frozen. The State Bar also obtained records from Wells Fargo Bank which revealed that petitioner commingled his client, personal, and law practice funds through his operating account.

Approximately one month after the bankruptcy court lifted the freeze on petitioner's Nevada State Bank trust account, petitioner opened a Wells Fargo Bank trust account. Wells Fargo Bank records established that petitioner routinely failed to fully distribute client funds deposited into this

trust account. In response to the bank records obtained from Nevada State Bank and Wells Fargo Bank, coupled with petitioner's testimony from his bankruptcy proceedings, the State Bar served petitioner with two subpoenas duces tecum.

The first subpoena sought documents evidencing the creation and applicable termination of the attorney-client relationship with regard to certain individuals, documents relating to the settlement or distribution of funds through the Nevada State Bank trust account, and accounting records for this account. The first subpoena also sought production of certain personal and business tax returns, "with schedules, W-2's, and 1099's issued to [petitioner's] employees, contract personnel or other entities for the tax years 2009, 2010, 2011, 2012, 2013 and 2014." Petitioner objected to the first subpoena and refused to produce the requested documents by invoking his Fifth Amendment privilege against self-incrimination.

The second subpoena sought documents evidencing the creation and applicable termination of the attorney-client relationship involving transactions through the Wells Fargo Bank trust account, documents relating to the settlement or distribution of funds through this account, and accounting records. The second subpoena also sought the same documents and records for petitioner's operating account at Wells Fargo Bank. Petitioner objected to the second subpoena and filed a motion to quash, again asserting his Fifth Amendment right.

Ultimately, the chairman of respondent Southern Nevada Disciplinary Board ordered petitioner to comply with the first subpoena and set a telephonic hearing with regard to the second subpoena. However, the chairman later vacated the hearing after determining that the parties'

submitted briefs were sufficient to reach a decision. Thereafter, the chairman rejected petitioner's objections to the second subpoena. The State Bar filed a formal disciplinary complaint against petitioner. This petition for writ relief followed.

## *DISCUSSION*

This court has original jurisdiction to grant a writ of mandamus or prohibition, and issuance of such extraordinary relief is solely within this court's discretion. Nev. Const. art. 6, § 4; *Smith v. Eighth Judicial Dist. Court*, 107 Nev. 674, 677, 818 P.2d 849, 851 (1991). "A writ of mandamus is available to compel the performance of an act that the law requires as a duty resulting from an office, trust, or station, or to control a manifest abuse of discretion." *We the People Nev. v. Miller*, 124 Nev. 874, 879, 192 P.3d 1166, 1170 (2008); *see also* NRS 34.160. A writ of prohibition is the counterpart to a writ of mandamus and "may be issued to compel a person or body exercising judicial functions to cease performing beyond its legal authority." *Halverson v. Miller*, 124 Nev. 484, 487, 186 P.3d 893, 896 (2008); *see also* NRS 34.320. Additionally, "this court has inherent supervisory authority over the State Bar of Nevada, and" has "the power to fashion an appropriate remedy" to ensure that "all members of the State Bar of Nevada, and all its functionaries, perform their duties properly," and therefore has the power to consider a petition for writ relief arising from a State Bar matter. *O'Brien v. State Bar of Nev.*, 114 Nev. 71, 73, 952 P.2d 952, 953 (1998) (internal quotation marks omitted); *see also* SCR 76(1) (providing that "[t]he state bar is under the exclusive jurisdiction and control of the supreme court"). We therefore exercise our discretion to consider this petition for a writ of mandamus or prohibition. *See Valley Health Sys., LLC v. Eighth Judicial Dist. Court*, 127 Nev. 167, 171, 252 P.3d 676, 679 (2011) (recognizing the availability of extraordinary writ relief to

 

prevent blanket discovery orders issued without regard to relevance of the information sought or discovery orders compelling disclosure of privileged information).

Petitioner argues that he has a Fifth Amendment right to refuse to produce the documents requested by both subpoenas. Conversely, respondents argue that the Fifth Amendment privilege does not shelter petitioner from producing the requested documents and that compliance with both subpoenas is necessary to protect the public.

"This court applies a de novo standard of review to constitutional challenges." *Grupo Famsa v. Eighth Judicial Dist. Court*, 132 Nev., Adv. Op. 29, 371 P.3d 1048, 1050 (2016) (internal quotation marks omitted). Additionally, "[t]his court reviews a district court's interpretation of a statute or court rule . . . de novo, even in the context of a writ petition." *Marquis & Aurbach v. Eighth Judicial Dist. Court*, 122 Nev. 1147, 1156, 146 P.3d 1130, 1136 (2006). "When a rule is clear on its face, we will not look beyond the rule's plain language." *Morrow v. Eighth Judicial Dist. Court*, 129 Nev. 110, 113, 294 P.3d 411, 414 (2013).

The Self-Incrimination Clause of the Fifth Amendment, which applies to the states through the Fourteenth Amendment, *Malloy v. Hogan*, 378 U.S. 1, 6 (1964), states that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V; *see also* Nev. Const. art. 1, § 8(1).

With regard to client accounting records, the Supreme Court Rules provide that "[a]ctive members of the State Bar of Nevada shall deposit all funds held in trust in this jurisdiction in . . . trust accounts." SCR 78.5(1)(a) (internal quotation marks omitted). Moreover, "[e]very lawyer engaged in the practice of law in the State of Nevada shall maintain

and preserve for a period of at least five years, after final disposition of the underlying matter, the records of the accounts . . . and make such records available to the State Bar for inspection upon request." SCR 78.5(1)(b). Finally, "[e]very active member of the State Bar shall, as a condition of maintaining active membership in the State Bar, be conclusively deemed to have consented to the reporting and production requirements mandated by this Rule." SCR 78.5(5).

In addition to the SCR, the Nevada Rules of Professional Conduct similarly state that "[a]ll funds received or held for the benefit of clients by a lawyer or firm . . . shall be deposited in . . . a trust account." RPC 1.15(a). Further, "[c]omplete records of such account funds . . . shall be kept by the lawyer and shall be preserved for a period of seven years after termination of the representation." *Id.* Violation of the RPC constitutes professional misconduct. RPC 8.4(a).

State bar counsel is required to "[i]nvestigate all matters involving possible attorney misconduct . . . called to bar counsel's attention, whether by grievance or otherwise." SCR 104(1)(a). In investigating possible attorney misconduct, bar counsel may compel the production of pertinent documents by subpoena. SCR 110(1). "Whenever any person subpoenaed . . . to provide documents pursuant to Rule 78.5(1)(b) . . . refuses . . . to provide the requested documents, that person shall be deemed in contempt of the disciplinary board." SCR 110(3).

As a member of the State Bar, petitioner is required to comply with the SCR and the RPC. In particular, these rules require petitioner to maintain client funds in a trust account, keep records of client accounts, and provide such records to the State Bar upon request. *See* SCR 78.5(1)(a)-(b); RPC 1.15(a). Although lawyers are not excluded from asserting their

Fifth Amendment right against self-incrimination, *Spevack v. Klein*, 385 U.S. 511, 514 (1967) (recognizing the threat of disbarment and loss of professional standing as powerful forms of compulsion), we must determine, as a matter of first impression before this court, if this privilege protects petitioner from disclosing client accounting records the SCR and RPC require him to maintain and preserve.

We take this opportunity to adopt the required records doctrine under *Grosso v. United States*, 390 U.S. 62 (1968), to reach our conclusion. This doctrine precludes a person from asserting their constitutional privilege against self-incrimination if: (1) the purpose of the inquiry is essentially regulatory, (2) the person asserting the privilege regularly maintained the records sought, and (3) the records have a public aspect. *See id.* at 67-68 (citing *Shapiro v. United States*, 335 U.S. 1 (1948)). "Generally, the doctrine is regarded as an exception rather than a threshold test to determine whether there is a privilege." Deborah F. Buckman, Annotation, *Construction and Application of Required Records Doctrine*, 21 A.L.R.7th, Art. II § 2 (2017). The reasoning behind this exception to the Fifth Amendment right against self-incrimination is long-standing:

> The principle applies not only to public documents in public offices, but also to records required by law to be kept in order that there may be suitable information of transactions which are the appropriate subjects of governmental regulation and the enforcement of restrictions validly established. There, the [Fifth Amendment] privilege, which exists as to private papers, cannot be maintained.

*Shapiro*, 335 U.S. at 17 (quoting *Wilson v. United States*, 221 U.S. 361, 380 (1911)).

In adopting the required records doctrine and specifically applying it to the production of records and documents in bar matters, we now join other jurisdictions. For example, in examining the three elements under the required records doctrine, the Court of Appeals of Maryland held that an attorney could not invoke the Fifth Amendment privilege against self-incrimination to avoid producing certain client and financial records subpoenaed in a bar disciplinary matter. *Unnamed Attorney v. Attorney Grievance Comm'n of Md.*, 708 A.2d 667, 679 (Md. App. 1998). First, the court determined that "rules relating to admission to the Bar demonstrate that the purpose of the Attorney Grievance Commission's inquiry is regulatory." *Id.* Second, the court determined that "the records and documents sought to be obtained by the subpoena are required and customarily kept by persons engaging in the practice of law." *Id.* Third, the court determined that "the records subpoenaed have public aspects," as "one of the purposes of attorney disciplinary proceedings is to protect the public." *Id.*; *see Matter of Kenney*, 504 N.E.2d 652, 657-58 (Mass. 1987); *see also Fla. Bar v. White*, 384 So. 2d 1266, 1267 (Fla. 1980) (stating that records "required to be maintained by The Florida Bar . . . are deemed to be affected with a public interest, necessary to be maintained for the protection of the public as well as The Florida Bar"); *La. State Bar Ass'n v. Chatelain*, 513 So. 2d 1178, 1183 (La. 1987) (stating that "[w]hile attorneys' records may not be public documents, they do have 'public aspects' in that the public at large has an interest in the integrity of the profession and clients in particular have an interest in how an attorney handles money which belongs to them").

In applying the required records doctrine to the client accounting records requested in the case at hand, all three elements are

SUPREME COURT
OF
NEVADA

(O) 1947A

similarly satisfied. First, the purpose of respondents' inquiry into petitioner's client accounting records is clearly regulatory because the State Bar is responsible for investigating instances of possible attorney misconduct called to its attention as part of the State Bar's self-regulating function. Second, petitioner, as the person asserting his Fifth Amendment privilege, should have regularly maintained client accounting records as required. Third, the client accounting records sought have a public aspect because mandating compliance protects the public and the integrity of the legal profession. Therefore, because the requested client accounting records meet the elements of the required records doctrine enunciated in *Grosso*, the Fifth Amendment does not protect petitioner from disclosure of client accounting records. Our holding is consistent with the holdings from other jurisdictions addressing the issue. *See, e.g., Unnamed Attorney*, 708 A.2d at 668; *White*, 384 So. 2d at 1267. For all of the foregoing reasons, we deny petitioner's petition with regard to production of client accounting records.

Next, we address petitioner's contention that the Fifth Amendment also protects him from production of tax records. Production of tax records is "clearly appropriate" under many circumstances. *Hetter v. Eighth Judicial Dist. Court*, 110 Nev. 513, 519, 874 P.2d 762, 765 (1994). However, due to policy considerations, "both state and federal courts have subjected discovery requests for income tax returns to a heightened scrutiny." *Id.* at 519, 874 P.2d at 765-66. Accordingly, this court has recognized that federal courts have required that the requested tax returns reasonably appear relevant and material to the issue at hand. *Id.* at 520, 874 P.2d at 766. "In most instances, it has been held that production of a tax return should not be ordered unless there appears to be a compelling need for the information it contains, such as is not otherwise readily

obtainable." *Id.* (internal citation omitted). "While this state does not recognize a privilege for tax returns . . . public policy suggests that tax returns or financial status not be had for the mere asking." *Id.*

Here, it is unclear whether the circumstances warrant production of tax records, and it is additionally unclear whether such a broad request is justified.[1] Accordingly, we cannot determine whether production of the tax records is clearly appropriate or if the tax records are reasonably relevant and material to the issue at hand. *See id.* at 520, 874 P.2d at 765-66. Further, we cannot determine whether there is a compelling need for the tax records or if respondents are merely asking for the tax records. *See id.* at 520, 874 P.2d at 766. Therefore, we direct the Southern Nevada Disciplinary Board to hold a hearing to determine how the tax records are relevant and material to the State Bar's allegations that petitioner mismanaged his client trust account and to assess whether there is a compelling need for the records. Based on the foregoing, we deny petitioner's petition for writ relief with regard to the requested client accounting records; however, we grant his petition for writ relief with

---

[1]Although it is unnecessary for this court to decide whether the Fifth Amendment protects petitioner from production of tax records given our resolution of this issue, we note that other jurisdictions hold that "the existence and possession of [records normally kept] has no testimonial significance" and "[t]herefore, the production of the documents is not incriminating for purposes of the Fifth Amendment." *Unnamed Attorney*, 708 A.2d at 676-77 (where an attorney moved to quash the state bar disciplinary commission's subpoena for client and financial records by asserting that production of such documents would violate his Fifth Amendment privilege against self-incrimination); *see Matter of Kenney*, 504 N.E.2d at 658 (where the court disagreed with an attorney who argued that the act of producing financial statements is testimonial).

regard to the requested tax records and direct the clerk of this court to issue a writ of prohibition directing the Southern Nevada Disciplinary Board to vacate its order to the extent it required petitioner to comply with the first subpoena that sought disclosure of tax records and to hold a hearing, consistent with this opinion. Finally, because both subpoenas requested client accounting records, we deny petitioner's writ of mandamus requesting this court to quash the two subpoenas.

_____, J.
Douglas

We concur:

_____, C.J.
Cherry

_____, J.
Gibbons

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich

SUPREME COURT
OF
NEVADA

(O) 1947A

11