563 A.2d 1117

**In re CRIMINAL INVESTIGATION NO. 465.**

**No. 656, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

Sept. 27, 1989.

Deborah E. Jennings (Piper & Marbury on the brief), Baltimore, for appellant.

Timothy X. Sokas, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellee.

Argued before ROBERT M. BELL, WENNER and FISCHER, JJ.

ROBERT M. BELL, Judge.

This appeal from the judgment of the Circuit Court for Baltimore City presents a single question:

> Does the Fifth Amendment bar compelled production of documents by a Grand Jury target when production would be testimonial and incriminatory?

This question, in turn, has several aspects: (1) whether, where they have been created prior to incorporation, documents sought by the subpoenas duces tecum which are the subject of this appeal are corporate records; and, (2) if so, whether appellant,[1] nevertheless, has a Fifth Amendment

---

1. We refrain from disclosing the name of the appellant or his professional association. See Maryland Rule 8–123(c).

privilege to refrain from producing them. We approach the resolution of the question presented by addressing its aspects in the order set out.

Appellant, a medical doctor, has been practicing medicine, including as a health care provider with the Maryland Medical Assistance Program ("Medicaid"), out of an office in his home, as a sole practitioner since August 1984. Near the end of 1987, however, he incorporated his practice as a professional association. Toward that end, he filed Articles of Incorporation that were accepted by the State of Maryland on November 30, 1987 and the professional association held its first organizational meeting and issued stock on December 23, 1987. Tax returns were filed in the name of the professional association beginning with calendar year 1988.

Alleging that appellant did not purchase enough medical supplies to justify the number of laboratory tests for which he billed Medicaid, the Medicaid Fraud Control Unit ("MFCU") of the Attorney General's office, began an investigation which focused on the period beginning 1984 through the present. During the investigation, appellant's counsel met with MFCU representatives and made a "hypothetical" proffer as follows:

> [A] man named "Dan Rodman" sold medical supplies to [appellant] for cash from the early days of [appellant]'s practice in 1984 through January 11, 1988. At the inception of the business relationship between [appellant] and Mr. Rodman, Mr. Rodman provided [appellant] with a business card listing his name, address and telephone number. The information on the card was transferred to a Rolodex card by [appellant]'s secretary shortly after its presentation.... [Appellant] used the supplies purchased from Mr. Rodman to supplement supplies purchased from other medical suppliers.

Appellant was served with three subpoenas duces tecum seeking documents, including "rolodex" record referring to

Dan Rodman. One was directed to appellant personally [2] and two were directed to the custodian of records of the professional association.[3] Although appellant, through counsel advised MFCU that he had documents responsive to the subpoenas, he asserted a Fifth Amendment privilege with respect to them. The trial court granted the State's motion to compel. It determined that the professional association came into existence on November 30, 1987, the date the Articles of Incorporation were filed; that requiring production of the documents did not involve testimonial compulsion; and that appellant's Fifth Amendment privilege did not apply to the documents. Implicit in that ruling is the factual finding that the documents at issue are corporate, rather than appellant's individual, records.

Pursuant to the court's order, appellant delivered the documents in a sealed envelope, and, prior to their being turned over to MFCU, we issued a stay.

In *In Re Special Investigation No. 281*, 299 Md. 181, 473 A.2d 1 (1984), the Court of Appeals was faced with a question similar to that *sub judice*. There, as here, the appellant, who was a dentist, practiced as a sole practitioner for a time before incorporating and transferring his practice to his professional association. There, as here, the MFCU, during the course of an investigation, issued a subpoena duces tecum to the professional association seeking its patients' records, including some which were created prior to incorporation. There, as here, a motion to quash the subpoenas, premised, in part, on the Fifth Amendment privilege against self-incrimination was filed by the appel-

---

**2.** This subpoena required production of "[a]ny and all 'rolodex filing systems, and/or any like system of recording names, addresses, telephone numbers, and associated information, relating to the medical practice of [appellant]".

**3.** One of these was identical to the subpoena directed to appellant individually; the other, however, required production of "any and all documents, papers, rolodex cards, or any other printed matter in your possession referring to Dan Rodman, Daniel Rodman, D. Rodman or any other individual with the last of Rodman or Rodmans."

lant. There, as here, the motion was denied. There, the trial court found:

> As to the Medicaid patient records listed in item 1 of the May 20, 1983 subpoena, the effect of paragraphs 6 and 9 of the stipulation of facts[4] is, that the pre-incorporation patient records were fully available for use by the P.A. and were commingled with the post P.A. records without distinction in the P.A. files.
>
> For all practical purposes they became the property of the P.A. and the individual dentist cannot claim his personal Fifth Amendment privilege as to them.

299 Md. at 188, 473 A.2d 1.

The Court of Appeals dismissed the appellants' appeal; nevertheless, it addressed the dentist's Fifth Amendment privilege against self-incrimination argument and found it to be lacking in merit. It pointed out that "an individual cannot rely upon the privilege to avoid producing the records of a collective entity which are in its possession in a representative capacity, even if these records might incriminate him personally," *See Bellis v. United States*, 417 U.S. 85, 88, 94 S.Ct. 2179, 2183, 40 L.Ed.2d 678 (1974), and that this is true no matter what the size of the corporation or the relationship of the individual to it, *i.e.*, whether he is sole shareholder and sole employee. *See Reamer v. Beall*, 506 F.2d 1345, 1346 (4th Cir.1974), *cert. denied*, 420 U.S. 955, 95 S.Ct. 1338, 43 L.Ed.2d 431 (1975). The Court held that "The patient records here at issue were a part of the warp and

---

4. The parties entered into a Stipulation prior to the hearing on the motion to quash. Paragraph 6 of the Stipulation provided:

   If a patient who was treated by [appellant] prior to July 1, 1981, came in for treatment after July 1, 1981 [when the professional association began operations], no new patient chart was created; rather, new entries were made on the existing records.

   Paragraph 9, in turn, provided:

   Patient records, *i.e.*, charts and ledger cards, were maintained, regularly at ... [appellant's Baltimore County office] in alphabetical order without regard to the type of payment plan the patient uses without regard to the July 1, 1981, [incorporation] date....

   299 Md. at 187, 473 A.2d 1.

woof of the professional association." 299 Md. at 198, 473 A.2d 1. Thus, the Court determined that "the trial judge was correct in his conclusion that title to those patient records passed to the professional association once the records were turned over to it. These are no longer the records of the individual dentist." *Id.*[5] *See also In Re Criminal Investigation No. 1,* 75 Md.App. 589, 602–03, 542 A.2d 413 (1988).

Appellant does not perceive this case to be of particular relevance to the case *sub judice.* He contends that the documents at issue here are entirely different from the patient records at issue in *In Re Special Investigation No. 281.* Patient records, he posits, are "corporate records in the traditional sense." Consequently, they, indeed, "were a part of the warp and woof of the professional association." On the other hand, appellant maintains that these records are entirely different, depending for their status as corporate records upon their use or adoption by the professional association. In that regard, appellant contends that there is no evidence to indicate that they were used by the professional association. He asserts that simply because purchases may have been made by appellant from Rodman after the professional association began operations does not suffice and is not a form of alchemy that changes otherwise private documents into corporate records. To be corporate records, he concludes, the records subpoenaed must in fact be "organizational records held in a representative capacity." *Bellis,* 417 U.S. at 92–93, 94 S.Ct. at 2185–86. As he has done all along, appellant maintains that the records subpoenaed are neither organizational nor held in a representative capacity; rather they are his private records.

---

5. The Court also determined that because the dentist voluntarily created the pre-incorporation patient records, and they could be verified by someone other than the dentist, his act of producing the patient records pursuant to the subpoena would not constitute compelled testimonial incrimination in violation of the Fifth Amendment. 299 Md. at 195, 473 A.2d 1, citing *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976).

The MFCU views the issue entirely differently. It argues that when, using the analysis suggested by *In Re Grand Jury Investigation, Special Grand Jury No. II*, 600 F.Supp. 436 (D.Md.1984), the subpoenaed documents are considered in light of *In Re Special Investigation No. 281*, it is patent that they are corporate, rather than private or individual, records. Under definitions formulated by the District Court,

> [c]orporate papers are those (1) which were prepared as a part of the duties of an employee, representative, director or agent of the corporation or as an aide in performing the duties and responsibilities of an employee, representative, director or agent of the corporation or (2) which were sent, received, maintained, or used by the employee, representative, director, or agent of the corporation in the course of the business of the corporation,

and

> [a] person has possession in a representative capacity if he (1) has possession of corporate papers for safekeeping at the request of the corporation or (2) has or obtained possession of said papers as a part of the duties of the possessor as an agent, employee, representative or director of the corporation or as an aide in performing the duties and responsibilities as such to the corporation or (3) has possession of corporate papers by virtue of having removed them in an unauthorized fashion from corporate premises, records, files or depositories.

*Id.*, 600 F.Supp. at 438. From this, the MFCU argues that to the extent that the documents are records of the purchase of medical supplies used in appellant's medical practice, whether individual or corporate, they are not in the nature of personal diaries or other "documents containing more intimate information." *Bellis*, 417 U.S. 87–88, 94 S.Ct. at 2182–83. It argues:

> Instead, such records obviously pertain to the duties and responsibilities of an employee. Without knowledge of what supplies are available, and how to obtain more, it would be impossible to conduct appellant's business as a

medical practice. The rolodex used by the medical practice is also a corporate record.

Concerning the issue of whether the records passed from the sole proprietorship to the professional association, the MFCU argues that they are records relating to an ongoing business between appellant and a medical supplier. As such, they are important to the medical practice. Because they are important to the medical practice, they are equatible to the patient records which the Court of Appeals characterized as essential attributes of the professional association in *In Re Special Investigation No. 281.*

The question whether the documents passed to the corporation is one of fact. The trial court's determination of such questions is entitled to deference by an appellate Court. *See* Maryland Rule 8–131(c).[6] Unless the court's determination on the evidence is clearly erroneous, we may not set it aside. Viewing the documents submitted in satisfaction of the subpoenas in light of the test enunciated in *In Re Grand Jury Investigation, Special Grand Jury, supra,* and in light of the statement of facts upon which the appeal proceeded leads to the conclusion that the trial court's determination of the facts is not clearly erroneous. This is especially so since it is clear that were this an arms length transaction between strangers, the purchaser very likely would insist upon receiving just this kind of information as part of the transfer of the business. We perceive no error.

Our determination that the trial court's finding of fact that the subpoenaed documents were corporate, rather than individual, records, does not end our inquiry.

---

6. Maryland Rule 8–131(c) provides:
   (c) *Action Tried Without a Jury.*—When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses.

In his brief, appellant argues that the "sole proprietor-ships/corporate" distinction may no longer make a difference. He relies, in part, upon *United States v. Lang*, 792 F.2d 1235, 1238 (4th Cir.) *cert. denied*, 479 U.S. 985, 107 S.Ct. 574, 93 L.Ed.2d 578 (1986), in which the Fourth Circuit Court of Appeals observed that the traditional

> division between papers with personal content and corporate content has been blurred.... Under the modern analysis, it is relevant to the issue whether the documents are privately owned by the individual being subpoenaed or in his possession, the compelled production, identification, and authentication of incriminating material by the possessor will incriminate him whether or not the contents are his.

This inquiry need not detain us long.

In *Braswell v. United States*, 487 U.S. 99, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988) the Supreme Court was explicit and emphatic in its recognition of the continued viability of the "collective entity rule", that "for purposes of the Fifth Amendment, corporations and other collective entities are treated differently from individuals." 108 S.Ct. at 2288. It held that a custodian of records for a corporation may not interpose a personal act of production privilege, "even though the act of production may prove personally incriminating." *Id.*, 108 S.Ct. at 2292. Under this analysis, once it has been determined that the documents are corporate documents, it follows ineluctably that appellant's assertion of his Fifth Amendment right against self-incrimination as to those documents is unavailing. *Braswell* is fully dispositive.[7]

---

7. To the extent that appellant argues that the subpoenas, because they purport to reach "any and all documents ... referring to Dan Rodman", are overbroad, that argument also must be rejected. Appellant concedes, as indeed, the statement of facts reflects, that with one exception, the subpoenas were directed to the Custodian of Records of the professional association. Consequently, the reach of those subpoenas must be considered in context and, when this is done, it is obvious that they only seek and could only seek corporate, as opposed to individual, records.

JUDGMENT AFFIRMED.
COSTS TO BE PAID BY APPELLANT.