7 A.3d 520

**JUNG CHUL PARK**

v.

**CANGEN CORPORATION.**

**No. 152, Sept. Term, 2008.**

Court of Appeals of Maryland.

Oct. 27, 2010.

506

Carl R. Gold (Law Offices of Carl R. Gold, Townson), on brief, for appellant.

Harry Levy (Schumaker Williams, P.C., Townson), on brief, for appellee.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

BARBERA, J.

This case involves the privilege against compelled self-incrimination, based on the command of the Fifth Amendment that "[n]o person ... shall be compelled in any criminal case to be a witness against himself...." U.S. CONST. amend. V. We are asked to determine whether a former employee of a corporation is entitled to invoke the privilege in response to a

subpoena duces tecum commanding him to produce corporate documents. We hold, by application of the "collective entity doctrine," *see, e.g., Braswell v. United States,* 487 U.S. 99, 104–05, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988), that the former corporate employee is not entitled to invoke the privilege.

## I.

This appeal has its genesis in a replevin action filed by Appellee Cangen Corporation ("Cangen"), in the Court of Common Pleas of Montgomery County, Pennsylvania. According to counsel's description, Cangen "is a biotech[nology] company located in Baltimore, but it does have offices and, significant, connections to Korea." In the replevin action, Cangen sued Richard A. Silfen, the company's former president and chief executive officer, whom Cangen fired in 2006. Cangen sought to replevy "thousands of [Cangen's] documents, records, information, and materials, in electronic form or otherwise," which Mr. Silfen allegedly "stole after his employment with Cangen was terminated." Cangen stated at a later hearing before the Circuit Court for Howard County, Maryland, that "some of these documents were ... given to journalists and financial concerns in Korea, which is where [Cangen] gets a lot of its financing, we believe in an effort to discredit the company."

As part of the replevin action, Cangen filed in the Montgomery County, Pennsylvania Court of Common Pleas a motion for issuance of a commission for a subpoena for a deposition of Appellant, Dr. Jung Chul Park, a former employee of Cangen who currently resides in Howard County, Maryland. The Court of Common Pleas granted Cangen's motion and directed the Clerk of the Circuit Court for Howard County to issue the subpoena. Pursuant to the Maryland Uniform Interstate Depositions and Discovery Act, Maryland Code (1973, 2006 Repl. Vol.), §§ 9–401 to 9–407 of the Courts and Judicial Proceedings Article, Cangen filed the commission and an application for a subpoena duces tecum with the Clerk of the Circuit Court for Howard County. The Clerk of the Circuit Court issued a Subpoena and Notice of Deposition Duces

Tecum De Bene Esse ("the Subpoena"), which were duly served on Dr. Park.

The Subpoena commanded Dr. Park to appear at a deposition in Howard County and bring documents fitting the requests attached to the Subpoena. Of the twenty-two document demands, most referred to documents that Dr. Park allegedly had received, provided, or sent to various individuals or entities, including Mr. Silfen, "relating to or concerning Cangen Corporation." Other demands referred to "transcripts, recordings, videotapes, notes, memos, etc., concerning [a] meeting that took place on October 12, 2007," which Dr. Park allegedly attended, and documents that were "provided, exchanged or made available at the meeting." The remaining demands sought production of "[a]ll documents" in Dr. Park's possession "relating to Cangen Corporation, including any personal notes, memoranda, or other similar documents," and "[a]ll Cangen Corporation documents" in Dr. Park's possession.

Dr. Park appeared at the deposition but did not produce any of the documents that were the subject of the Subpoena. Instead, he asserted a Fifth Amendment privilege in connection with the act of producing those documents. Dr. Park also invoked the privilege in response to nearly every question posed by Cangen's counsel during the deposition.

Cangen filed in the Circuit Court for Howard County a motion to compel Dr. Park to produce "documents responsive to Cangen's subpoena duces tecum" in his "custody, control and possession." Cangen limited the motion, however, to corporate documents in Dr. Park's possession. Cangen alleged in the motion that, "through its own fact investigation, [Cangen] has determined that Dr. Park is in possession of certain business records for [sic] which Dr. Park does not own and has no right to possess."

Cangen argued that Dr. Park's "broad assertion of the Fifth Amendment privilege is wholly inappropriate." In support, Cangen argued: "[T]here is no privilege in the contents of documents"; "[f]urther, there is no Fifth Amendment protec-

tion in the production of corporate records" because "artificial entities are not protected by the Fifth Amendment"; a "custodian of corporate records cannot object to the production of business documents on self-incrimination grounds even if the records may personally incriminate the custodian"; and "[t]his holds true for former employees as well." Cangen did not argue in that motion or file a separate motion arguing that Dr. Park should be compelled to produce non-corporate documents that were the subject of Cangen's original document demand. Nor did Cangen ask that Dr. Park be made to respond to one or more of the questions he refused to answer at the deposition.

Dr. Park filed an answer in opposition to the motion to compel the corporate documents, arguing that the "so-called collective entity doctrine" relied upon by Cangen "has no application where the individual [from whom the corporate documents are sought] is acting only in his personal capacity[,]" and a former employee holds corporate documents in a purely personal capacity. Thus, Dr. Park asserted, he is entitled to invoke the Fifth Amendment privilege because the compelled act of producing the corporate documents, under the circumstances presented, would be testimonial and incriminating.

The Circuit Court held a hearing on the motion to compel Dr. Park's compliance with the portion of the Subpoena that commanded production of "Cangen documents that are in Dr. Park's possession." In the words of Cangen's counsel, "we're seeking Cangen documents and [Dr. Park], certainly, had no right to retain them after leaving Cangen." Dr. Park denied that he was the custodian of any corporate records, and "he wasn't deposed in any kind of custodial capacity, 'cause (sic) he couldn't have been." Cangen, through counsel, responded that Dr. Park "holds [the corporate documents sought] in a representational capacity," and he "would never have had those documents had he not been our employee[.]"

The Circuit Court held the matter sub curia and, shortly after the hearing, entered an order granting the motion to

compel. The order was not accompanied by a memorandum opinion setting forth the court's findings of fact and conclusions of law.

Dr. Park noted an appeal to the Court of Special Appeals. On our own initiative we issued a writ of certiorari to address the following issue:

Whether the Circuit Court erred in granting Cangen Corporation's Motion to Compel Production of Documents over Dr. Park's invocation of the Fifth Amendment privilege against self-incrimination; in other words, does the "collective entity doctrine" apply to a former employee such as Dr. Park, even in the case in which it is the corporation itself seeking the production of documents.

## II.

The language of the Fifth Amendment, "No person ... shall be compelled in any criminal case to be a witness against himself," if read literally would appear to imply that the privilege applies only to testimony sought to be compelled in a criminal case.[1] Yet, the Supreme Court has given a broader interpretation to the privilege, holding that it

not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.

*Lefkowitz v. Turley,* 414 U.S. 70, 77, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973). The privilege, moreover, protects a mere witness as fully as it does one who is a party defendant. *Id.*

The Fifth Amendment privilege is a personal right, belonging solely to the person who is himself incriminated by his compelled testimony, because the privilege prevents "extortion of information from the accused himself[.]" *Couch v.*

---

1. The Fifth Amendment privilege is binding on the states. *Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964).

*United States,* 409 U.S. 322, 328, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973). Consequently, the privilege may be asserted by anyone who expects that responding to the information sought would tend to incriminate him or her in a subsequent criminal case, by compelling either a direct admission of the commission of an illegal act or information that would "furnish a link in the chain of evidence needed to prosecute the claimant[.]" *Hoffman v. United States,* 341 U.S. 479, 486–87, 71 S.Ct. 814, 95 L.Ed. 1118 (1951).

 The mere assertion of the privilege, however, does not excuse the witness from testifying. Rather, "[i]t is for the court to say whether his silence is justified, and to require [the witness] to answer, if it clearly appears to the court that [the witness] is mistaken" in relying on the privilege for the refusal to testify. *Id.* at 486, 71 S.Ct. 814; *Simmons v. State,* 392 Md. 279, 297, 896 A.2d 1023, 1034 (2006). The standard that guides the courts in deciding whether the witness can invoke the privilege is whether "the witness has reasonable cause to apprehend danger from" answering a direct question or producing documents demanded. *Hoffman,* 341 U.S. at 486, 71 S.Ct. 814. Further, "[t]o sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Id.* at 486–87, 71 S.Ct. 814; *Simmons,* 392 Md. at 297, 896 A.2d at 1034. We have framed the *Hoffman* standard as a two-part inquiry: "(1) whether there is a reasonable basis for the invocation of the privilege; and (2) whether the privilege is invoked in good faith[.]" *Simmons,* 392 Md. at 298, 896 A.2d at 1034 (quoting *Bhagwat v. State,* 338 Md. 263, 272–73, 658 A.2d 244, 248 (1995)).

 Ultimately, though, the Fifth Amendment privilege "must be accorded liberal construction." *Hoffman,* 341 U.S. at 486, 71 S.Ct. 814; *see also Choi v. State,* 316 Md. 529, 536, 560 A.2d 1108, 1111 (1989) ("This Court has repeatedly emphasized that the privilege against compelled self-incrimination,

under both the Fifth Amendment and Art. 22 of the Declaration of Rights, must be accorded a liberal construction in favor of the right that it was intended to secure." (Internal quotation marks and citations omitted)). Thus, "for the trial court to determine that the Fifth Amendment privilege does not apply, it must be *'perfectly clear,* from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer[s] *cannot possibly* have such a tendency to incriminate.' " *Smith v. State,* 394 Md. 184, 211, 905 A.2d 315, 331 (2006) (quoting *Hoffman,* 341 U.S. at 487–88, 71 S.Ct. 814 (quotation marks and citation omitted) (emphases in original)).

We have said that Dr. Park invoked the Fifth Amendment privilege in response to the Subpoena's command for production of Cangen's corporate documents. Dr. Park argued that he could not be compelled to produce those documents because the act of production, under the circumstances, would tend to incriminate him. The Circuit Court issued an order granting the motion to compel Dr. Park to produce the corporate documents. The order, however, did not hint at the court's reasoning.

It is clear from our discussion of the law so far that Dr. Park was not precluded from invoking the privilege solely because he did so during the discovery stage of a civil case. Moreover, although the law requires the court to explain its reasoning for denying a witness the right to invoke the protections of the Fifth Amendment, we are satisfied that, under the particular facts of this case, we are not prevented from deciding the correctness of the Circuit Court's decision to grant the motion to compel. We come to that conclusion because Cangen itself provided the facts demonstrating the reasonable basis for Dr. Park's invocation of the privilege, that is, Cangen described Dr. Park as a former employee and asserted that he was currently in wrongful possession of the corporate documents. And, presumably because of those factual allegations, Cangen did not argue that Dr. Park's assertion of the privilege was not in good faith. We therefore conclude that Dr. Park asserted the privilege in good faith,

and that the Circuit Court granted the motion to compel, not because Dr. Park failed to show reasonable cause for, and a good faith assertion of, the privilege, but rather because the court found merit in Cangen's contention that Dr. Park's act of producing the documents would fall outside the scope of the Fifth Amendment protection due to the "collective entity" doctrine.[2]

## III.

The parties disagree about whether Dr. Park is entitled to invoke a Fifth Amendment privilege to resist compliance with the Subpoena's command that he produce the corporate documents. Dr. Park argues that the very act of complying with the Subpoena would be both testimonial and incriminating because it "might provide information incriminating to him, namely, that he is in possession of documents which Cangen claims he has no right to possess." Cangen counters that, because Dr. Park was once an employee of the corporation, he holds the corporate documents as a corporate representative and, in that representative capacity, he, like the corporate entity itself, has no privilege to assert.

To resolve this dispute, we must delve further into the Supreme Court's jurisprudence concerning the Fifth Amendment privilege. We begin with the following observation by the Supreme Court:

The term "privilege against self-incrimination" is not an entirely accurate description of a person's constitutional protection against being "compelled in any criminal case to be a witness against himself." The word "witness" in the constitutional text *limits the relevant category of compelled*

---

**2.** Our conclusion in this regard is not to be understood as allowing circuit courts to avoid the obligation to make the findings required by *Hoffman* and *Simmons*. Rather, it is due solely to the particular circumstances of this case that we consider it unnecessary to remand the case to the Circuit Court for it to make express the findings that are obviously implied by that court's order.

*incriminating communications to those that are "testimonial" in character.*

*United States v. Hubbell,* 530 U.S. 27, 34, 120 S.Ct. 2037, 147 L.Ed.2d 24 (2000) (emphasis added).

In addition to being testimonial, the communication, oral or written, must be "compelled." Thus, with regard to documents, the Supreme Court has made clear that if a document was voluntarily prepared, then, ordinarily, its contents are not protected by the Fifth Amendment privilege. This is so regardless of how incriminating the document's contents may be, either to the person who is compelled to disclose the document, or to others. *See United States v. Doe,* 465 U.S. 605, 610–612, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1983); *Fisher v. United States,* 425 U.S. 391, 409–10, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976).

Although it is the rule that the contents of a voluntarily prepared document are not cloaked with the protections of the Fifth Amendment privilege, the *act* of producing those documents in response to a subpoena may itself have a testimonial aspect. *Fisher,* 425 U.S. at 410, 96 S.Ct. 1569 ("The act of producing evidence in response to a subpoena . . . has communicative aspects of its own[.]") The *Hubbell* Court explained how this is so:

[T]he act of production itself may implicitly communicate "statements of fact." By "producing documents in compliance with a subpoena the witness could admit that the papers existed, were in his possession or control, and were authentic." Moreover, . . . when the custodian of documents responds to a subpoena, he may be compelled to take the witness stand and answer questions designed to determine whether he has produced everything demanded by the subpoena. The answers to those questions, as well as the act of production itself, may certainly communicate information about the existence, custody, and authenticity of the documents. Whether the constitutional privilege [against compelled self-incrimination] protects the answers to such questions, or protects the act of production itself, is a

question distinct from the question whether the unprotected contents of the documents themselves are incriminating. 530 U.S. at 36–37, 120 S.Ct. 2037 (internal citations and footnotes omitted).

The *Fisher* Court, though recognizing an act of production privilege, ultimately decided that it did not apply under the facts of that case.[3] Eight years later, however, the Court applied the act of production privilege to hold that a sole proprietor could assert the privilege with regard to the compelled act of producing business documents, because the act of production would involve testimonial self-incrimination. *Doe,* 465 U.S. at 613–14, 104 S.Ct. 1237.

▆▆▆▆ Although natural persons have the entitlement, in the appropriate case, to assert a Fifth Amendment privilege, it has long been understood that corporations and other "collec-

---

**3.** *Fisher* involved a subpoena served on an attorney demanding that the attorney produce his client's tax preparer's work papers. The Court held, based on the attorney-client privilege, that the attorney could not be made to produce any documents that the client had a Fifth Amendment privilege not to produce. 425 U.S. at 405, 96 S.Ct. 1569. The Court therefore looked to whether the taxpayer could assert the privilege. The Court accepted that compliance with the subpoena was compelled and "tacitly concedes the existence of the papers demanded and their possession or control by the taxpayer. It also would indicate the taxpayer's belief that the papers are those described in the subpoena." *Id.* at 410, 96 S.Ct. 1569. The Court ultimately concluded, though, that, "however incriminating the contents of the accountant's work papers might be, the act of producing them—the only thing which the taxpayer is compelled to do—would not itself involve testimonial self-incrimination." *Id.* at 410–11, 96 S.Ct. 1569. The Court reasoned:

> [T]he Government is in no way relying on the "truth-telling" of the taxpayer to prove the existence of or his access to the documents. The existence and location of the papers are a foregone conclusion and the taxpayer adds little or nothing to the sum total of the Government's information by conceding that he in fact has the papers. Under these circumstances by enforcement of the summons no constitutional rights are touched.

*Id.* at 411, 96 S.Ct. 1569. (internal citations and quotations omitted). Since *Fisher,* the Supreme Court has refined the "foregone conclusion" doctrine by clarifying that the act of production privilege cannot be overcome unless the Government can show that it had prior knowledge of the information supplied by the individual's act of production. *See Hubbell,* 530 U.S. at 44–45, 120 S.Ct. 2037.

tive entities" do not. *See United States v. White,* 322 U.S. 694, 698, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944) ("The constitutional privilege against self-incrimination is essentially a personal one, applying only to natural individuals."); *Hale v. Henkel,* 201 U.S. 43, 74–75, 26 S.Ct. 370, 50 L.Ed. 652 (1906) (holding that, "while an individual may lawfully refuse to answer incriminating questions unless protected by an immunity statute, it does not follow that a corporation, vested with special privileges and franchises, may refuse to show its hand when charged with an abuse of such privileges"). From the recognition that a collective entity has no Fifth Amendment privilege was born the "collective entity" doctrine.

The collective entity doctrine provides that a custodian of the records of a corporation or other collective entity, acting as the representative of that entity, cannot refuse on Fifth Amendment grounds to produce corporate records, even if the contents would personally incriminate the custodian. *Braswell v. United States,* 487 U.S. 99, 104–05, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988); *Bellis v. United States,* 417 U.S. 85, 90, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974); *see also Unnamed Attorney v. Attorney Grievance Comm'n,* 349 Md. 391, 396–400, 708 A.2d 667, 669–671 (1998) (tracing the development of the doctrine). As the *Braswell* Court describes the doctrine,

> [r]epresentatives of a "collective group" act as agents "[a]nd the official records and documents of the organization that are held by them in a representative rather than in a personal capacity cannot be the subject of the personal privilege against self-incrimination, even though production of the papers might tend to incriminate them personally."

487 U.S. at 107, 108 S.Ct. 2284 (quoting *White,* 322 U.S. at 699, 64 S.Ct. 1248).[4]

---

**4.** The *Braswell* Court noted that, with its holding in *White,* the Court "jettisoned reliance on the visitatorial powers of the State over corporations owing their existence to the State[,]" which was one of the bases for the Court's earlier decisions. 487 U.S. at 108, 108 S.Ct. 2284 (citing *White,* 322 U.S. at 700–01, 64 S.Ct. 1248).

Of relevance to the parties' dispute in the present case, the *Braswell* Court rejected the argument that, in the wake of *Fisher* and *Doe*, "the act of production privilege is available without regard to the entity whose records are being sought." 487 U.S. at 108, 108 S.Ct. 2284 (citations omitted). The Court acknowledged that, "[t]o be sure, the holding in *Fisher*—later reaffirmed in *Doe*—embarked upon a new course of Fifth Amendment analysis[.]" *Id.* at 109, 108 S.Ct. 2284. The Court nevertheless disagreed that *Fisher* had "rendered the collective entity rule obsolete." *Id.* The Court explained why not:

> The agency rationale undergirding the collective entity decisions, in which custodians asserted that production of entity records would incriminate them personally, survives.... [T]he Court has consistently recognized that the custodian of corporate or entity records holds those documents in a representative rather than a personal capacity. Artificial entities such as corporations may act only through their agents, and a custodian's assumption of his representative capacity leads to certain obligations, including the duty to produce corporate records on proper demand by the Government. Under those circumstances, the custodian's act of production is not deemed a personal act, but rather an act of the corporation. Any claim of Fifth Amendment privilege asserted by the agent would be tantamount to a claim of privilege by the corporation—which of course possesses no such privilege.

*Id.* at 109–10, 108 S.Ct. 2284 (internal citations omitted). *Accord Unnamed Attorney,* 349 Md. at 407, 708 A.2d at 674 (stating that, "[a]lthough the Supreme Court's focus has shifted from the contents of the records themselves to the act of production, the Court has not limited ... the collective entity doctrine," which retains its "vitality even with respect to the act of production").

The *Braswell* Court recognized, though, that

> certain consequences flow from the fact that the custodian's act of production is one in his representative rather than personal capacity. Because the custodian acts as a repre-

sentative, the act is deemed one of the corporation and not the individual. Therefore, the Government concedes, as it must, that it may make no evidentiary use of the "individual act" [of production] against the individual. For example, in a criminal prosecution against the custodian, the Government may not introduce into evidence before the jury the fact that the subpoena was served upon and the corporation's documents were delivered by one particular individual, the custodian.

487 U.S. at 117–18, 108 S.Ct. 2284.

The Supreme Court has not defined "custodian" or definitively established the circumstances under which an individual holds records in a "representative capacity." Nonetheless, the Court in *Bellis* gave every indication that the collective entity doctrine applies to both current and former employees of a collective entity. *Bellis* involved a partner in a small law firm who, upon dissolution of the partnership but before the partnership's winding up had concluded, took with him partnership records. The question before the Court was whether the partner could invoke the act of production privilege to resist a subpoena to produce those records. The Court held that the partnership qualified as a collective entity, so the partner, as a custodian of the records of that entity, could not invoke the privilege. In the course of so holding, the Court noted the following:

Petitioner properly concedes that the dissolution of the partnership does not afford him any greater claim to the privilege than he would have if the firm were still active. Under Pennsylvania law, dissolution of the partnership does not terminate the entity; rather it continues until the winding up of the partnership affairs is completed.... *Moreover, this Court's decisions have made clear that the dissolution of a corporation does not give the custodian of the corporate records any greater claim to the Fifth Amendment privilege. Wheeler v. United States,* 226 U.S. 478, 489–90 [33 S.Ct. 158, 57 L.Ed. 309] (1913); *Grant v. United States,* 227 U.S. 74, 80 [33 S.Ct. 190, 57 L.Ed. 423] (1913).

*We see no reason why the same should not be true of the records of a partnership after its dissolution.*

417 U.S. at 96 n. 3, 94 S.Ct. 2179 (emphasis added).

 We have not had the occasion to identify the circumstances under which an individual is deemed to be in possession of a collective entity's records in a representative capacity. The Court of Special Appeals, however, has done so, in *In re Criminal Investigation No. 465,* 80 Md.App. 347, 563 A.2d 1117 (1989). In an opinion authored by Judge Robert M. Bell, now Chief Judge of this Court, the intermediate appellate court defined, as follows, possession of a collective entity's business records in a representative capacity:

"A person has possession in a representative capacity if he (1) has possession of corporate papers for safekeeping at the request of the corporation or (2) has or obtained possession of said papers as a part of the duties of the possessor as an agent, employee, representative or director of the corporation or as an aid in performing the duties and responsibilities as such to the corporation or (3) *has possession of corporate papers by virtue of having removed them in an unauthorized fashion from corporate premises, records, files or depositories.*"

*Id.* at 353, 563 A.2d at 1120 (quoting *In Re Grand Jury Investigation, Special Grand Jury No. II,* 600 F.Supp. 436, 438 (D.Md.1984) (emphasis added)).

We bear in mind these legal principles as we address the parties' arguments.

## IV.

The ultimate question in this case is whether the collective entity doctrine controls the disposition of this case, as Cangen urges, or whether, instead, the act of production doctrine dictates the outcome of this case, as Dr. Park insists.

We note at the outset that Dr. Park's individual act of producing the corporate documents is both testimonial and incriminating. By producing the documents, Dr. Park would

be admitting that the documents existed, were in his possession or control, and that he believed that the documents were those described in the Subpoena. *See Fisher*, 425 U.S. at 410–13, 96 S.Ct. 1569; *Doe*, 465 U.S. at 612–13, 104 S.Ct. 1237. And, by such "testimony" he would be incriminating himself given the allegation that he is in wrongful possession of the documents.[5] Consequently, Dr. Park is entitled to assert a Fifth Amendment privilege in the act of production, *unless*, as Cangen argues, he comes within the scope of the collective entity doctrine as a holder of the corporate documents in a representative capacity.

Both sides agree that, at the time he was commanded to produce the corporate documents, Dr. Park was no longer an employee of Cangen. Based on that fact, Dr. Park argues that the corporate documents, if any, that he now possesses are held by him, not in a representative capacity, but rather a personal one. Cangen counters that, because the documents are corporate in character, Dr. Park necessarily holds them as a representative of the corporation, even though he is no longer employed by Cangen.

Our research discloses only a few cases on this issue and that the courts are split along the lines drawn by the parties here. We are persuaded that the line of cases supporting Cangen's position charts the better course.

Before discussing those cases, however, it bears noting that the Supreme Court has never held that the termination of a

---

**5.** The Supreme Court has said that "whether the tacit averments [of a person being compelled to produce documents] are both 'testimonial' and 'incriminating' for purposes of the Fifth Amendment" may "depend on the facts and circumstances of particular cases or classes thereof." *Braswell*, 487 U.S. at 103, 108 S.Ct. 2284 (quoting *Fisher*, 425 U.S. at 410, 96 S.Ct. 1569). We have mentioned that the Circuit Court made no fact findings in this case and simply issued an order granting the motion to compel. The absence of any record of the court's thought process, however, does not prevent our deciding the testimonial and incriminating nature of the act of producing the corporate documents, because the relevant facts alleged—that Dr. Park is a former employee of Cangen, currently in wrongful possession of documents belonging to Cangen—are undisputed, at least for purposes of the argument on the motion to compel.

corporate employment relationship precludes application of the collective entity doctrine to the compelled production of corporate records, when properly demanded. The Court has suggested the contrary. We have mentioned the dicta in *Bellis* that "this Court's decisions have made clear that the dissolution of a corporation does not give the custodian of the corporate records any greater claim to the Fifth Amendment privilege." 417 U.S. at 96 n. 3, 94 S.Ct. 2179. As support for that statement, the *Bellis* Court cited *Wheeler v. United States,* 226 U.S. 478, 33 S.Ct. 158, 57 L.Ed. 309 (1913), and *Grant v. United States,* 227 U.S. 74, 33 S.Ct. 190, 57 L.Ed. 423 (1913).

In *Wheeler,* the Supreme Court wrote that, although the corporation "had gone out of existence, leaving its books and papers in the possession of the defendants,"

> the privilege of the Constitution against unreasonable searches and seizure does not protect against the lawful examination in due course of books of this character; *nor does the privilege of individuals against self-incrimination in the production of their own books and papers prevent the compulsory production of the books of a corporation with which they happen to be or have been associated.* It was the character of the books and papers as corporate records and documents which justified the court in ordering their production. . . . We think the character of the books was not changed for this purpose, because the corporation had gone out of existence after making over the books to the defendants. Such books and papers still remained subject to inspection and investigation, and no constitutional right of the defendants was violated when, being found in possession of the documents, they were required to produce them for inspection by the grand jury.

226 U.S. at 490, 33 S.Ct. 158 (emphasis added).

To like effect is *Grant.* In that case, the Court affirmed a finding of contempt against an attorney who, on behalf of his client, asserted the Fifth Amendment privilege to refuse to comply with a subpoena directing the attorney to produce

books and documents of a defunct corporation, which had been left with the attorney for safe-keeping by the client, who claimed to own the documents. The *Grant* Court held that,

> [w]hether or not the title to [the corporate documents] had passed to [the client] when the [company] ceased to do business, their essential character was not changed. They remained subject to inspection and examination when required by competent authority, and they could not have been withheld by [the client] himself upon the ground that they would tend to incriminate him.... It follows that [the attorney], from any point of view, was not justified in his refusals....

227 U.S. at 80, 33 S.Ct. 190.

Cangen directs us to several cases that, consistent with *Bellis, Wheeler,* and *Grant,* hold that the collective entity doctrine applies to the compelled production of corporate documents by a former officer or employee of the corporation. One such case is *In re Sealed Case,* 950 F.2d 736 (D.C.Cir. 1991), authored for the Court of Appeals for the District of Columbia Circuit by then Judge Ruth Bader Ginsburg. That case involved a grand jury subpoena directed to the appellee, a former senior HUD official to produce, *inter alia,* "[a]ll documents in your possession, custody, or control, obtained or generated in connection with your employment at HUD." *Id.* at 737. One of the issues before the court was whether, assuming the documents sought were government records, the appellee could assert a Fifth Amendment privilege not to produce them, given that the employee could face prosecution for violation of federal law that "makes the taking, concealing, or destroying of government property or government records a criminal offense." *Id.* at 740. The court had no difficulty deciding that it was immaterial whether the appellee might be forced to incriminate herself by the act of production. *Id.* The court pointed out that decisions of the Supreme Court indicate that government records, like corporate records, are not subject to Fifth Amendment protection, "not only where the contents of the public or corporate documents might incriminate the possessor but also where the very possession

of documents (and hence their production) might be incriminating." *Id.* at 739 (citing *Braswell,* 487 U.S. at 117, 108 S.Ct. 2284; *Davis v. United States,* 328 U.S. 582, 66 S.Ct. 1256, 90 L.Ed. 1453 (1946)). The court also cited for that proposition, *inter alia, In re Grand Jury Proceedings,* 119 B.R. 945, 948, 951–52 (E.D.Mich.1990), which held that a former bankruptcy trustee could not successfully plead Fifth Amendment protection in response to the compelled production of bank records.

The *In re Sealed Case* court remanded the case because the district court had not determined which documents among those demanded were government records. In doing so, however, the court made plain that the appellee had no Fifth Amendment privilege to resist production of any of the documents that were deemed government records because, under *Braswell,*

> [j]ust as corporate records belong to the corporation and are held for the entity by the custodian only in an agency capacity, so government records do not belong to the custodian, *in this case the appellee,* but to the government agency. Their production thus falls outside the Fifth Amendment privilege, which is a personal one.

950 F.2d at 740 (internal citation omitted) (emphasis added).

A year later, the Eleventh Circuit decided *In re Grand Jury Subpoena Dated November 12, 1991,* 957 F.2d 807 (11th Cir.1992). That case involved a subpoena demand for the production of documents from David Paul, a former chairman of the board of a bank, who, before he was terminated from those positions, admittedly

> caused a substantial volume of corporate documents to be copied, and he kept them when he left. Paul presently exercises custody and control over these corporate documents.... [He] took them when he left, and has retained them for purposes of defending himself, individually, in the civil, criminal and administrative proceedings that are being mounted against him.

*Id.* at 809. The Eleventh Circuit rejected Paul's argument that he had a Fifth Amendment privilege to resist the subpoe-

na for corporate records in his possession. He urged the court to create an exception to the collective entity doctrine for former corporate officers "who assumed custody of corporate documents during their employment, but who have terminated their employment with the corporation by the time the grand jury subpoena issues." *Id.* at 810.

The court reasoned, much as had the court in *In re Sealed Case,* that

a custodian of corporate records continues to hold them in a representative capacity even after his employment is terminated. It is the immutable character of the records as corporate which requires their production and which dictates that they are held in a representative capacity. Thus, the production of such documents is required regardless of whether the custodian is still associated with the corporation[.]

*Id.* at 812.

The Eleventh Circuit found support for that conclusion in the decisions of other courts that, in "considering the act of production privilege[,] have recognized that, in light of the continuing vitality of the collective entity doctrine, a custodian of corporate records has no Fifth Amendment privilege to refuse to produce corporate records merely because his association with the corporation has terminated by the time of the issuance of the subpoena." *Id.* at 811 (citing cases).

Dr. Park asks us to disregard the above decisions in favor of the rationale underpinning, for example, the decision of the Court of Appeals for the Second Circuit in *In re: Three Grand Jury Subpoenas Duces Tecum Dated January 29, 1999,* 191 F.3d 173 (2d Cir.1999). Answering a question like the one presented here, that court held "that a Fifth Amendment privilege is available to the ex-employee in such circumstances[.]" *Id.* at 174. The court reasoned that, given the agency rationale the Court used in *Braswell* to explain the collective entity doctrine, "once the agency relationship terminates, the former employee is no longer an agent of the corporation and is not a custodian of the corporate records."

*Id.* at 181. Therefore, "[w]hen such an individual produces records in his possession he cannot be acting in anything other than his personal capacity. In no sense can it be said that, as *Braswell* requires, 'the corporation produced the records subpoenaed.'" *Id.* (internal citation omitted). *Accord In re Grand Jury Proceedings,* 71 F.3d 723 (9th Cir.1995) (following *In re: Three Grand Jury Subpoenas Duces Tecum Dated January 29, 1999* in deciding that "the collective entity rule does not apply to a former employee of a collective entity who is no longer acting on behalf of the collective entity"); *cf. United States v. McLaughlin,* 126 F.3d 130, 133 n. 2 (3d Cir.1997) (observing in dicta that "[i]t could, of course, be that a person served with a subpoena is not authorized to produce corporate documents, in which case he is not acting as corporate custodian and all bets are off; a former employee, for example, who produces purloined corporate documents is obviously not within the scope of the *Braswell* rule"), *cert. denied,* 524 U.S. 951, 118 S.Ct. 2366, 141 L.Ed.2d 735 (1998).

■■■ We are persuaded to follow the decisions of the Eleventh and District of Columbia Circuits, not simply because they represent a more faithful interpretation of *Bellis* and the earlier cases cited therein, *Wheeler* and *Grant,* but because, in the years since *Bellis* was decided, the Supreme Court has not retracted, limited, or called into question its comment in that case that "this Court's decisions have made clear that the dissolution of a corporation does not give the custodian of the corporate records any greater claim to the Fifth Amendment privilege." *Bellis,* 417 U.S. at 96 n. 3, 94 S.Ct. 2179. We therefore hold that a former employee of a corporation cannot assert the privilege against compelled incrimination to the act of producing corporate documents in his possession. As part of that holding, we adopt the definition employed in *In re Criminal Investigation No. 465,* 80 Md. App. at 353, 563 A.2d at 1120, for determining possession in a representative capacity, which includes that "[a] person has possession in a representative capacity if he ... has possession of corporate papers by virtue of having removed them in an unauthorized fashion from corporate premises, records,

files or depositories." Applying those holdings to the facts of this case, we reject Dr. Park's argument that any corporate documents he possesses are held by him solely in a personal capacity. It follows that, under *Braswell,* Dr. Park has no Fifth Amendment privilege to resist the demand that he produce such documents.[6] The Circuit Court was correct to grant the motion to compel.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

MURPHY, J., dissents.

MURPHY, J., dissenting.

If the subpoena that the majority would enforce had been issued by the State's Attorney for Howard County pursuant to a Grand Jury investigation, it is clear that—unless compliance with the subpoena was ordered by the Circuit Court pursuant to § 9–123 of the Courts and Judicial Proceedings Article—the Petitioner could refuse to comply with the subpoena on the basis of his privilege against self-incrimination because § 7–104 of the Criminal Law Article, in pertinent part, provides:

(c) *Possessing stolen personal property.*—(1) A person may not possess stolen personal property knowing that it has been stolen, or believing that it probably has been stolen, if the person:

(i) intends to deprive the owner of the property;

---

**6.** Because Dr. Park's duty to produce the documents results from his status as a representative of Cangen, should he ever face criminal prosecution in connection with his possession of those documents, the government would be foreclosed from making evidentiary use in the criminal case of Dr. Park's "individual act" of production. *Braswell,* 487 U.S. at 117–18, 108 S.Ct. 2284. Notwithstanding the dissent's concerns to the contrary, we believe that the Supreme Court made this point clear in *Braswell.* We therefore are confident that, should it ever come to pass that Dr. Park is prosecuted criminally for possessing the corporate documents, no state or federal court would contravene *Braswell* by allowing the prosecutor to make evidentiary use of the fact that Dr. Park produced them in this replevin action.

(ii) willfully or knowingly uses, conceals, or abandons the property in a manner that deprives the owners of the property; or

(iii) uses, conceals, or abandons the property knowing that the use, concealment, or abandonment probably will deprive the owner of the property.

I therefore dissent from the holding that—in the replevin action asserted by the Respondent against Mr. Silfen, one of the Respondent's former employees who is alleged to have stolen documents *after* his employment was terminated—the Petitioner is not entitled to assert the act of production privilege with respect to documents that the Petitioner (in the words of the Respondent's motion) "does not own and has no right to possess." Nothing in *Braswell v. United States,* 487 U.S. 99, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988), prohibits a former employee from asserting a *Fifth Amendment* privilege when his or her former employer moves for a court order compelling the former employee to produce documents that, according to the former employer, have been "stolen" from the former employer.[1]

In *U.S. v. Doe (In re Three Grand Jury Subpoenas Duces Tecum Dated January 29, 1999),* 191 F.3d 173 (2d Cir. 1999), while affirming the denial of the government's motion to compel a former corporate employee to produce documents belonging to his former employer, the United States Court of Appeals for the Second Circuit stated:

After full briefing and oral argument, [Hon. John E. Sprizzo of the United States District Court for the Southern District

---

1. Because of the Respondent's allegations—in the complaint it filed against Mr. Silfen, and in its motion to compel the Petitioner's production of documents—this Court should not affirm the ruling of the Circuit Court by indulging in the fiction that the Petitioner has possession of the Respondent's documents in a "representative capacity" on the ground that another former employee "removed them in an unauthorized fashion from [the Respondent's] corporate premises, records, files or depositories." *In Re Grand Jury Investigation, Special Grand Jury No. II,* 600 F.Supp. 436, 438 (D.Md.1984). In my opinion, this Court should squarely hold that the "receiver" of *stolen* corporate records does not possess those records in a "representative capacity."

of New York] denied the **government's** motion to compel in a ruling issued from the bench. The district court relied on our pre–*Braswell* decision, *In re Grand Jury Subpoenas Duces Tecum Dated June 13, 1983 and June 22, 1983*, 722 F.2d 981, 986–87 (2d Cir.1983) [hereinafter] (*"Saxon Industries"*), and the *Fifth Amendment* act of production doctrine established by the Supreme Court in cases such as *Fisher* and *United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984), to hold that **"the act of testimonial [production] on behalf of a person who is no longer with the corporation is self-incrimination in its classic sense of the word, and the Constitution does not permit it." Judge Sprizzo stated further that the "question of testimonial incrimination is at its height when [the document] is produced by a person who is no longer employed by the corporation, because there is an inference that [he] may have stolen [it]."**

*Id.* at 176. (Emphasis supplied). While rejecting the argument that *Braswell* applied to former employees, the *Doe* Court's majority stated:

Applicability of *Braswell* in Context of Former Employees

The question presented by this appeal ... is whether former employees of a corporation, who have corporate documents in their possession, may claim an act of production privilege notwithstanding *Braswell.* To hold, as the government suggests, that *Braswell* governs this appeal would require an extension of *Braswell* to the former employee based upon a conception that the former corporate employee who has corporate records holds them solely in a representative capacity, and acts as the corporation's agent when he or she produces them, even though the employment relationship has ended. Such a holding would also require us to overrule our decision in *Saxon Industries,* which is otherwise on point.

*Saxon Industries,* 722 F.2d 981 (2d Cir.1983), involved an appeal by a former corporate officer who was held in civil contempt for his refusal to comply with a grand jury subpoena duces tecum commanding production of corporate

records retained by him after he left the corporation. **Though decided before** *Braswell,* **the** *Saxon Industries* **panel anticipated its holding, stating that "if the witness were still a [corporate] officer or employee he would normally be obligated as a representative of the company to produce its documents, regardless of whether they contained information incriminating him."** *Id.* **at 986. We held, however, that "once the officer leaves the company's employ, . . . he no longer acts as a corporate representative but functions in an individual capacity in his possession of corporate records."** *Id.* **at 986–87.** Thus, in *Saxon Industries,* we remanded the case to the district court to determine "whether appellant's production of the [corporate] documents, regardless of their contents, might have [a] self-incriminatory effect." *Id.* at 987. We further noted that should the district court determine that the production would prove incriminatory, "the government could either by stipulation or by obtaining a grant of immunity pursuant to 18 U.S.C. §§ 6002–6003, immunize the act of production; such immunity would preserve the appellant's *Fifth Amendment* rights with respect to his conduct in producing the documents, *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972)." 722 F.2d at 988.

\* \* \*

We disagree that *Braswell* affects our holding in *Saxon Industries* and hold that the latter remains good law. The rule in *Braswell* was predicated on the rationale that corporate custodians hold and produce documents only in a representational capacity and that when a corporate custodian produces subpoenaed corporate records, at bottom, "the corporation produces the documents subpoenaed." *Braswell,* 487 U.S. at 118, 108 S.Ct. 2284. It follows, as we noted in *Saxon Industries,* that once the agency relationship terminates, the former employee is no longer an agent of the corporation and is not a custodian of the corporate records. When such an individual produces records in his possession he cannot be acting in anything other than his

personal capacity. In no sense can it be said, as *Braswell* requires, that "the corporation produced the records subpoenaed." Nothing in *Braswell* convinces us otherwise, and neither the government nor the dissent has directed us to any authority for the proposition that the agency relationship between an employee and an employer somehow continues after the employment relationship ends.

Indeed, this is the crux of our difference with the dissent. **In the absence of legal authority to the effect that a former employee remains an agent of the corporation, or any evidence that the corporation and the individual intended to maintain an agency relationship, the foundation upon which *Braswell* rests—that one who is currently employed by the corporation holds documents as an agent in a custodial capacity so that it is actually the corporation that is producing the records—is removed.** *Id.* at 179–181. (Emphasis supplied). I agree with that analysis. In light of the assertions set forth in the Respondent's pleadings and motions, the above quoted portion of Judge Sprizzo's ruling has special relevance in the case at bar.

Moreover, because the case at bar does not involve a subpoena issued by a prosecutor, I also disagree with the majority's conclusion that, "should [the Petitioner] ever face criminal prosecution in connection with his possession of the corporate documents, the government would be foreclosed from making evidentiary use in that criminal case of [the Petitioner's] 'individual act' of production." During a grand jury investigation or a criminal trial, if (1) the court determines that an act of production would prove incriminating, and (2) the prosecution takes the steps that are required to immunize the act of production, the producer's *Fifth Amendment* rights will be preserved. As the State is not a party in the case at bar, I am not persuaded that this Court's ruling in a replevin case would necessarily foreclose a Maryland prosecutor from subsequently making evidentiary use of the Petitioner's production. I am persuaded, however, that this Court does not have the authority to foreclose a Pennsylvania prosecutor or a federal prosecutor from doing so. The order

granting the Respondent's motion to compel should be reversed.